Cheshire
No. 7779

ROBERT POWLEY, ADMINISTRATOR,
ESTATE OF ESTHER E. MURPHY

v.

WILLIAM J. LESSARD & a.

December 2, 1977

*David M. Tower,* of Jaffrey, on the brief and *Willard I. Shattuck, Jr.,* of Fitchburg, Massachusetts, orally for the plaintiff Robert Powley.

*Wiggin & Nourie,* of Manchester (*Mr. Jeffrey B. Osburn* orally), for the defendants William and Amanda Lessard.

PER CURIAM. This case is an appeal from a dismissal of a petition in equity brought by Robert Powley, the administrator of the estate of Esther E. Murphy, against William and Amanda Lessard seeking to set aside a real estate conveyance. Following trial before a Master, *Charles T. Gallagher,* Esq., the petition was dismissed and plaintiff's exceptions were transferred by *Douglas,* J. We affirm the trial court's decision.

On May 11, 1972, Mrs. Esther E. Murphy, an eighty-four-year-old widow from Jaffrey, New Hampshire, conveyed her 130-acre

homestead to the defendants, William and Amanda Lessard, also residents of Jaffrey. In January of 1973, the plaintiff, who was Mrs. Murphy's grandson filed a petition to set aside this conveyance.

Mrs. Murphy had lived alone on the property in question since 1945, the year her husband died. After her husband's death, she personally managed the operation of her household with the sporadic but normal help of neighbors. Over the years she developed a reputation in the surrounding area as a sturdy, independent woman who knew her own mind.

The defendants knew Mrs. Murphy and her husband, prior to his death, since approximately 1933. Mr. Lessard was in the grocery business in the Jaffrey area for nearly forty years, both as an owner of a small grocery store and as an employee of the local A&P store. He had various contacts with Mrs. Murphy since 1933, delivering groceries to her and waiting on her in the store in which he worked. Approximately five years prior to the sale of the Gilmore Pond property to the defendants, Mrs. Murphy began asking Mr. Lessard to perform various chores about her home. He was offered, but never accepted, remuneration for these services. By the time of his retirement in 1972, he was performing numerous chores for Mrs. Murphy almost on a daily basis.

Mrs. Lessard, who was also a friend, ran occasional errands for Mrs. Murphy and visited her in her home. Other friends, such as the mailman, visited and assisted Mrs. Murphy from time to time. Mrs. Murphy's relatives, her grandson's family, visited her often, and they enjoyed an affectionate, normal relationship.

In February of 1972, Mrs. Murphy suffered a fall causing her to be hospitalized for ten days. Thereafter she spent approximately two weeks in the Powley home and then returned to her farm, where her great grandchildren took turns staying with her, until Mr. and Mrs. Lessard returned from Florida. As soon as Mr. and Mrs. Lessard returned from Florida, they resumed their usual routine of performing chores for Mrs. Murphy.

After her fall and hospitalization, Mrs. Murphy's health began to deteriorate. She was almost deaf, suffered impaired visual ability, and had difficulty in getting about. However, none of these physical disabilities affected her mental capacity to dispose of her property.

In February or March of 1972, Mr. Powley made an offer to Mrs. Murphy to buy the homestead for $10,000. It is clear that he

intended to take title and place a mortgage on the property in order to make certain renovations to the home and to allow his grandmother to continue to live there. Mrs. Murphy rejected this offer, but later approached Mr. Lessard and offered to sell the property to him. After several conversations initiated by Mrs. Murphy, the purchase price of $16,000 was agreed upon. Mr. Lessard stated that this amount was all that he could afford, but in addition, he offered to allow Mrs. Murphy to continue living on the premises, rent free, so long as she was able to care for herself. All of the conversation concerning the terms of the sale took place on the farm when no other persons were present.

Mr. Lessard testified that he did not know what Mrs. Murphy's property was worth and took no steps or made no inquiries in order to learn the value of the property. There is evidence that Mr. and Mrs. Lessard had purchased only one piece of real estate in their lives, that being their own home which they had purchased in 1937, and there is no evidence that they had any superior knowledge to that of Mrs. Murphy concerning the value of Mrs. Murphy's property.

The master found that the relationship between the Lessards and Mrs. Murphy was not of such a confidential nature as to require them to reject Mrs. Murphy's price for the farm. He also refused to find that the price was grossly inadequate "considering the fact that the defendant had all the burden and none of the benefits of ownership so long as Mrs. Murphy was able to live there."

■ Plaintiff claims that the master erred in not setting aside the conveyance. The evidence, however, did not compel a finding of influence, acquired and abused, or a confidence, reposed and betrayed. *Cornwell v. Cornwell*, 116 N.H. 205, 209, 356 A.2d 683, 686 (1976). Regardless of the relationship which existed, the court found no betrayal or abuse. It was Mrs. Murphy who approached the defendant and she was the one who fixed the price knowing full well that the property was worth something more than $16,000. The evidence did not compel a finding that the price was grossly inadequate considering the existing conditions. In fact, it was substantially more than the plaintiff himself had offered a few months before.

■ This court is alert to protect the private rights of those who need protection from those who would take improper advantage, but we also recognize our duty not to interfere with the rights

of free disposal which inhere in the ownership of property. We will not defeat the uncoerced wishes of an owner simply because of age, for the aged have as much right to control and dispose of their own property as the young. Here the grantor, although of advanced age and somewhat impaired health, reasonably deduced that the transaction was in her best interest, for she acquired the right to live rent free on the property as long as she was able. Nor is it unreasonable for one to reward faithful friends of thirty-nine-years' standing by setting the price within their reach.

■ The master found that there was no abuse of a confidential relationship. We are not at liberty to reach a conclusion contrary to that of the master. *Iafolla Industries, Inc. v. Curran-Cossette Constr. Corp.*, 116 N.H. 850, 368 A.2d 1175 (1976); *Hogan v. Leary*, 115 N.H. 88, 333 A.2d 724 (1975); *Brown v. Teel*, 108 N.H. 365, 236 A.2d 699 (1967).

■■ Plaintiff also contends that the trial court erred in denying his request that the fair market value of the real estate owned by Mrs. Murphy on May 11, 1972, was between $65,000 and $75,000. The plaintiff asserts that the only competent evidence on the value of the property was the testimony of his expert, and he claims that it was error for the trial court to admit on defendant's behalf testimony of the Jaffrey tax collector. We agree that it was error to admit into evidence the valuations made by the tax assessor. *Beers v. Davidson*, 81 N.H. 326, 125 A. 260 (1924). However, the master rejected all of this evidence pertaining to the valuation as unreliable. Any error because of the admission into evidence was not, therefore, prejudicial. *See Ibey v. Ibey*, 94 N.H. 425, 427, 55 A.2d 872, 874 (1947). Moreover, the master was not required to accept the testimony of plaintiff's expert. *Cragin v. Woollett*, 104 N.H. 202, 205–06, 182 A.2d 457, 460 (1962).

A review of the transcript and consideration of plaintiff's remaining exceptions and their objection to the master's report as a whole reveal no errors of law which would warrant reversal.

*Exceptions overruled.*

Douglas, J., did not sit.