Rockingham
No. 7774

JOHN J. WHEELEN

v.

WALLACE ROBINSON & a.

December 30, 1977

*Shaw & Robertson,* of Exeter (*Mr. Robert Shaw* orally), for the plaintiff.

*Casassa, Mulherrin & Ryan,* of Hampton (*Mr. David A. Riggs* orally), for the defendants.

BOIS, J.   Action on the case to recover profits derived by the defendants from the sale of real estate located in Hampton Beach. Hearing was before a Master (*Mayland H. Morse, Jr.,* Esq.), who recommended a verdict for the defendants. Verdict was entered for the defendants by the Court (*Perkins,* J.). During the course of the hearing, the plaintiff seasonably excepted to rulings admitting and excluding evidence; he also excepted to the denial of certain of his requests for findings and rulings. These and other exceptions appearing in the transcript were reserved and transferred by *Perkins,* J. We affirm.

The property was originally conveyed to the plaintiff through the assistance and participation of the defendants' real estate firm. Defendant Wallace Robinson arranged an $11,000 mortgage for the plaintiff at the Portsmouth Cooperative Bank (the bank) at the time of the closing in 1969. The purchase price was $16,000 or $16,500. After the acquisition of the property the defendants continued to serve the plaintiff as rental agents, charging a fee for their services. A friendly relationship among the parties originally existed and continued up through November 4, 1971. During this interval the plaintiff had financial problems. Although he undertook remodeling of the property, the work was incomplete and actually decreased its tenantability.

In the fall of 1971, the plaintiff's mortgage became in arrears and foreclosure was threatened. On November 4, 1971, at the request of the plaintiff, the defendants were able to forestall the foreclosure by taking title to the property and assuming the $10,108 balance of the debt. The plaintiff promised that he would within six weeks to two months receive proceeds from work which would enable him to repurchase the property and refinance the mortgage. This he never did. The defendants took title and assumed the mortgage in part because of their friendship with the plaintiff and in part because they were anxious to preserve their business rela-

tionship with the bank, to which their customers were frequently referred. According to the defendants, no prior foreclosure against their sponsored mortgagors had ever occurred.

After time passed and the plaintiff's inability to refinance became obvious, the defendants on July 19, 1972, reimbursed the plaintiff $2,200 which he had given for repairs made on the property. The financial burden of carrying the property further was felt to be unwarranted by the defendants, who so informed the plaintiff. The friendly relationship between the parties deteriorated. At no time did the plaintiff come forward to seek to have the defendants reconvey the property in return for consideration paid by the defendants. The master found that the defendants never refused to do so and stood ready far beyond the reasonable time intended by the original commitment by the plaintiff.

The plaintiff continued to have the full use of the dwelling area, which he occupied with his present wife and her children. Although the plaintiff may have performed some work and furnished materials or expended some money on the property during this time, he paid no rent and contributed nothing to the defendants for insurance, taxes, or mortgage amortization. The master determined that any value of the work, materials, or sums provided by the plaintiff was more than offset by his continued use of the premises.

After notice was given to the plaintiff of defendants' intent to sell the property, the defendants entered into a buy-and-sell agreement on September 28, 1972, with a third party to whom the property was sold in March of 1973 for $19,000. The master found that after payment of the mortgage to the bank, tax pro-rates, reimbursement for a loan taken out by the defendants to repair storm damage, and reimbursement of interest, carrying costs, and insurance carried during the term of ownership, "the defendants received no inordinate profit or benefit from this transaction." The master recommended that verdict be entered for the defendants because no damages were proven; no claim of equitable title retained by the plaintiff was proven; no theory of constructive trust was proven; and any theory of constructive trust was eroded by plaintiff's failure to come forward within the six-weeks to two-months period he specified "or in any reasonable time after the transfer" in November of 1971.

■ Plaintiff in his appeal argues that the court below should have imposed a resulting trust and required the defendants as trustees to make an accounting of the proceeds from the sale of the

Hampton property. Resulting trust theory, however, is inapposite. Generally, a resulting trust arises when a private or charitable trust fails in whole or in part; or a private or charitable trust is wholly performed without exhausting the trust estate; or property is purchased and the purchase price is paid by a person who directs the vendor to transfer title to the property at that time to another person. *Chamberlin v. Chamberlin,* 116 N.H. 368, 359 A.2d 631 (1976); *Kachanian v. Kachanian,* 100 N.H. 135, 121 A.2d 566 (1956); Restatement (Second) of Trusts § 404 (1959). The facts of the instant case fall into none of these categories.

Plaintiff has not specifically argued that a constructive trust should have been imposed in his favor. Failure to present this theory of recovery is not necessarily fatal; this court may consider whether one party should be made a constructive trustee for the benefit of another even where only a resulting trust is asserted. *Kachanian v. Kachanian supra.* A review of the record, however, suggests no reason to disturb the master's determination that the proceeds from the sale of the Hampton property should not be impressed with a constructive trust.

> [A] constructive trust will arise when there has been a conveyance of an estate upon an oral promise to reconvey . . . and the conveyance was . . . made . . . between parties standing in a confidential or fiduciary relationship to each other.

*Cornwell v. Cornwell,* 116 N.H. 205, 208, 356 A.2d 683, 685–86 (1976). It is important to note that "mere nonperformance without more of an oral agreement to sell land will not give rise to a constructive . . . trust." *Clark v. Lovelace,* 102 N.H. 97, 100, 151 A.2d 224, 225–26 (1959). There must be a finding of a confidential relationship, which exists

> "between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind . . . . [I]t is sufficient that there is a family relationship or other personal relationship of such a character that the transferor is justified in believing that the transferee will act in his interest." *Kachanian v. Kachanian,* 100 N.H. 135, 137, 121 A.2d 566, 568 (1956), quoting 1 A. W. Scott, Trusts § 44.2 (1967).

*Cornwell v. Cornwell,* 116 N.H. 205, 209, 356 A.2d 683, 686 (1976).

■■ Whether there was a confidence that was reposed and betrayed is a question for the master to decide. *Powley v. Lessard,* 117 N.H. 991, 380 A.2d 681 (1977). In the instant case the master found that any claim of constructive trust under which the defendants originally acquired the property was unproven. Although the master did find that there was a friendly relationship between the plaintiff and the defendants, he could have found that the friendship did not rise to the level of a confidential relationship. Since there is sufficient evidence to support such a finding, it must stand. *Id; Clark v. Lake Shore Farm, Inc.,* 117 N.H. 953, 379 A.2d 1270 (1977).

■ The master also found that even if there were a confidential relationship between the plaintiff and the defendants, the defendants did not abuse the confidential relationship since they did not fail to perform their promise to allow the plaintiff to repurchase the property in six-weeks to two-months' time. *See* 1 A. W. Scott, Trusts § 44.2, at 338–39 (3d ed. 1967). Not only did plaintiff fail to repurchase the property within six weeks to two months, but he also failed to object to the sale to a third party when he learned of the sale. *See Foley v. Foley,* 90 N.H. 281, 7 A.2d 396 (1939). The master's finding is amply supported by the evidence and so must stand. *Powley v. Lessard,* 117 N.H. 991, 380 A.2d 681 (1977); *Clark v. Lake Shore Farm, Inc.,* 117 N.H. 953, 379 A.2d 1270 (1977).

*Exceptions overruled.*

LOUGHLIN and BATCHELDER, JJ., sat by special assignment pursuant to RSA 490:3; all concurred.