Belknap
No. 7888

LAKES REGION FINANCE CORPORATION

v.

GOODHUE BOAT YARD, INC.
AND
MANELAOS MAKRIS

February 17, 1978

*Decker & Hemeon,* of Laconia (*David R. Decker* orally), for the plaintiff.

*Wescott, Millham & Dyer,* of Laconia (*Rodney N. Dyer* orally), for the defendants.

BOIS, J.   Action based on a promissory note. Trial by a Master (*Mayland H. Morse, Jr.,* Esq.) resulted in a verdict for the plaintiff in the sum of $2,247.87, with allowable court costs. During the course of trial, the plaintiff seasonably excepted to certain rulings admitting and excluding evidence. The verdict was approved by *Batchelder,* J. Plaintiff seasonably excepted to the denial of its motion to set aside the verdict. All questions of law raised by these exceptions were transferred to this court. We affirm.

The note in issue was given on March 21, 1975, by the defendants, who owed a balance of $8,008.88 on a $100,000 antecedent loan from the plaintiff. Attorney Colin Norberg was a stockholder, director, treasurer, chief operating officer, and legal counsel of

plaintiff finance corporation. At the time of the original loan he also represented the defendants; however, this attorney-client relationship had terminated before the execution of the note in question. At Norberg's suggestion, the note was secured by a second mortgage on a condominium unit owned by the defendant Makris.

Plaintiff was originally funded through a substantial loan obtained from a Pennsylvania trust company. Norberg was not personally responsible for this corporate obligation, but did have a line of credit with a Boston bank that was apparently interrelated with the affairs of the plaintiff.

During the latter part of 1975, Norberg received various communications from representatives of plaintiff's lender concerning a payment of principal due in December. He testified that the plaintiff paid $35,000 toward the installment due, that the plaintiff was being pressured to obtain the remaining $15,000, and that if he could get $10,000 from the defendants on their note (due on September 21, 1975), he could then borrow the balance to satisfy plaintiff's obligation.

Norberg repeatedly contacted Makris. Makris responded that he could not pay the note, but that one Edward Rubbico agreed to buy the condominium unit for $18,000. On December 10, 1975, Makris received from Rubbico a $3,000 advance. He deposited this advance in his bank account on December 29, 1975. Makris also received a signed sales agreement, which he allegedly executed and returned to Rubbico. Norberg continued to contact Makris, reminding him the note was overdue and demanding payment.

Makris and Rubbico went to a Manchester bank to arrange for Rubbico's assumption of the first mortgage of $13,500. Not satisfied with the interest rate, Rubbico decided to seek financing elsewhere. Makris offered Norberg $3,000 to delay foreclosure long enough to permit Rubbico to obtain satisfactory financing. Norberg did not recall this offer or conversation, but in any event informed Makris that he had decided to foreclose.

Norberg started foreclosure proceedings. On the day preceding the sale, Makris filed a petition for an injunction, seeking to delay the auction. On the morning of the sale, February 4, 1976, a hearing was scheduled before *William Lovejoy*, Esq., as Master. Norberg, Makris and his counsel, and Rubbico conferred before the hearing. They discussed the $3,000 deposit, Rubbico's desire to buy the unit, the unit's value, an unsigned sales agreement between

Makris and Rubbico, Norberg's refusal to delay the sale and the reasons therefor, and the activity and interest generated by the proposed auction. Makris testified that he pleaded for a few weeks' delay to allow completion of the sale to Rubbico; Norberg allegedly advised Makris that if the plaintiff could not meet its obligations because of the pending petition for an injunction, the plaintiff might seek legal recourse against Makris.

The parties had a hearing before the court. Norberg insisted that there could be no delay because of his commitment and the pressures upon him. Makris withdrew the petition because Norberg represented that many people expressed interest in the sale, that he anticipated a bid of five or six thousand dollars above the first mortgage, and that plaintiff would sustain irreparable damage if the sale were delayed. In fact, Norberg had received only five calls for sale information, no bid price had been discussed, and the only caller whose name Norberg obtained was Mel Borrin, who eventually bought the unit. (The master found the unit was actually acquired by Borrin's corporation, Preferred Properties, Inc.)

Before the sale, Norberg talked with defendants' counsel, who thought the price of the unit ranged from $18,000 to $20,000. The auction was opened on the premises at the noticed time. Makris, his attorney Edmund Hibbard, and Mel Borrin were present. Rubbico was not; the master found that the rejection of his offer may have discouraged him from attending. Hibbard requested an "upset price" of $18,500. Norberg, however, did not set an upset price, although he later testified that he would not have accepted a bid less than the first mortgage. Bidding began, and Borrin entered a bid of $500 over the first mortgage of $13,500. Hibbard objected to the bid's acceptance. Since no further bids were made, the bidding was closed. Hibbard requested that the bidding be reopened. Because Borrin objected, Norberg refused.

Of the $500 produced by the sale, $29.50 was credited against the note. The remainder was allocated to attorney fees and other costs of foreclosure. The plaintiff brought the present action to recover the balance due on the note. The master awarded the plaintiff $2,247.87, reasoning that "the plaintiff has occasioned an unwarranted loss to the defendant in the sum of five thousand dollars which is to be credited against the principal of the note." The master also disallowed attorney fees for the foreclosure. The basis of the master's decision was his determination that:

The auctioneer was not disinterested and questions of good faith in the proceedings are presented. In his conflicting position it was difficult to exercise the impartial judgment of one who might have recognized the deficiency of the proceeds, the surprising lack of interest that had been expected and entertain appropriate considerations of adjourning the sale to afford an opportunity to re-negotiate with the offerer, Mr. Rubbico. Such would have been a more reasonable effort to obtain for the mortgagor what the equity in this property was fairly worth.

The master was correct in ruling that the plaintiff had the duty to exercise good faith and use reasonable diligence to obtain the highest possible price at the foreclosure sale. Although "a mortgagee under a power of sale mortgage is not a trustee" in the technical sense, nevertheless "the mortgagee is required to conduct the foreclosure sale 'in the exercise of good faith and due diligence to protect the mortgagor's interest.' " *Silver v. First Nat'l Bank,* 108 N.H. 390, 391, 236 A.2d 493, 495 (1967). This duty may require the mortgagee to postpone the foreclosure sale until a more propitious time, or to establish an upset price below which he will not accept any offer. *Silver v. First Nat'l Bank supra; see Reconstruction Fin. Corp. v. Faulkner,* 101 N.H. 352, 143 A.2d 403 (1958). "A mortgagee's right to foreclose on a mortgage is a right to equitable relief, RSA 498:1 (Supp. 1975)." *Phinney v. Levine,* 117 N.H. 968, 381 A.2d 735 (1977).

The question whether the facts of a given transaction indicate that a mortgagee acted in good faith, equitably, and with due diligence is for the master. If his findings are supported by evidence in the record, particularly when he must judge the credibility of witnesses and the weight to be given their testimony, his resolution of this question will not be set aside. *See Cataldo v. Grappone,* 117 N.H. 1043, 381 A.2d 1194 (1977); *Wheelen v. Robinson,* 117 N.H. 1032, 381 A.2d 742 (1977); *Sullivan v. Chapman,* 117 N.H. 1060, 381 A.2d 749 (1977).

The record herein reveals ample evidence to support the master's decision that "[t]he handling of the foreclosure proceedings has effectively precluded the recovery of proceeds approaching the fair market value of the defendants' property." The master could properly have found that Norberg's refusal to accept Rub-

bico's offer, to set an upset price, and to postpone the sale may have resulted from his expectation that Borrin, a principal of one of his clients, might bid at the auction. This is borne out by the incongruity between Norberg's insistence that he immediately needed money to pay plaintiff's debt and the fact that he sold the property for a net of only $29.50. Even this amount did not have to be paid in full until the expiration of thirty days; this, we note, is more or less the same time period in which Rubbico had offered to pay $18,500.

We therefore hold that the court acted within its discretion in crediting the defendants with the difference between Rubbico's offer and Borrin's accepted bid. *See Wheeler v. Slocinski*, 82 N.H. 211, 215, 131 A. 598, 601 (1926).

■ The plaintiff asserts error in the master's disallowance of attorney fees for the foreclosure. We recognize that the instant sale was not premature or conducted in violation of statutory requirements. The defendants were in default, and Norberg followed the requirements of RSA 479:22–27 in noticing and conducting the sale. The master did not find that the plaintiff acted improperly in holding the auction. The master found, however, that the plaintiff's agent acted indiscreetly and improperly by establishing conflicting loyalties which disabled him from acting impartially. This constituted a breach of his duty to protect the mortgagor. We fail to see why such breach of duty should be rewarded. We note that costs of the sale were allowed; on the facts before us we cannot say that the master erred in disallowing the attorney fees.

*Exceptions overruled.*

LAMPRON, J., did not sit; CANN, J., sat by special assignment pursuant to RSA 490:3; all concurred.