Probate Court, Merrimack County
No. 78-280

## *In re* ESTATE OF EUGENE H. LUNDERVILLE

May 9, 1979

*Maynard, Perkins & Phillips*, of Concord (*Arthur W. Perkins* orally), for the estate.

*Upton, Sanders & Smith*, of Concord (*John F. Teague* orally), for the contestants.

GRIMES, J.   The issue in this will contest is whether the evidence supports the findings of the judge of probate that the will of Eugene H. Lunderville was proved in solemn form, that the testator was of sound mind, that no undue influence was exerted on him to make the will, and that there was no breach of a confidential relationship. Contestants' exceptions were transferred by *Cushing*, J. We hold that the evidence supports the findings.

The testator, Eugene H. Lunderville, died on July 10, 1977, at age seventy-one, owning a farm of about 105 acres. He had been offered $100,000 for the farm but did not want to sell and did not want it cut into houselots. The will in question, which was executed on June 27, 1977, left his entire estate to Frederick and Frances Dolloff, with whom he had been living since he was discharged from the hospital on June 7, 1977. The Dolloffs were neighbors of the testator and were friendly with him during the year or so before his death. They assisted him in cutting his hay, receiving for their work a portion of the hay, and Mr. Dolloff did some snow-plowing for him.

On February 20, 1976, Lunderville had executed an earlier will in which he divided his estate among three persons: Jessie Brown, his wife's cousin and close friend; Lena Kendall, a close friend and neighbor; and Richard Biron, a bank employee who had assisted him.

On May 25, 1977, while the testator was a patient at the Concord Hospital, it was discovered that he had a large, inoperable brain tumor. He was given medication and his doctors at first planned to send him to a nursing home. He improved enough, however, to go home if someone could be there to care for him. He did not want to go to a nursing home, and there was some thought of his going to a woman friend's house, but there was concern whether she could care for him if he should need to be lifted.

The record indicates that he asked the Dolloffs if he could stay with them and that they consented. There is also evidence that he offered to convey all of his property to them. He conferred with his lawyer to make the arrangements for the transfer. Lunderville left the hospital and went to the Dolloffs' home. Some three days after he left the hospital, Mrs. Dolloff, at testator's request, called the lawyer to inquire if the papers were prepared. The lawyer requested and later received a doctor's statement that Lunderville was competent. Thereafter the Dolloffs and Lunderville conferred with the lawyer at his office, and on June 27, 1977, all three met with the lawyer and a deed conveying the real property to the Dolloffs and a will leaving them his entire estate were executed. The deed was conditioned on the Dolloffs' caring for and providing a home for him and paying all necessary expenses, including medical and nursing care, for the rest of his life and funeral and burial expenses after his death.

At the time the deed and will were executed, the Dolloffs knew that Lunderville did not have long to live. It is unclear whether the testator knew how short a time he had to live, but his doctor did tell him that he had a serious medical problem in his brain that was inoperable, and that he would do what could be done to make him comfortable and free from serious pain. The doctor could not remember, however, whether he told Lunderville that he was going to die soon. The Dolloffs did not tell the testator that he had only a short time to live. There is evidence that the testator stated that he wanted to spend Christmas with the Dolloffs.

■ The evidence supports the findings that the will was executed according to law and that the testator was of sound mind. *Sylvain v. Henderson*, 116 N.H. 10, 354 A.2d 135 (1976). Although there was evidence that for a few days when he was first in the hospital he was at

times confused, the evidence showed that he improved to a point where he was fully competent to make the will. Both doctors who attended him testified that he was competent, and Mrs. Kendall, his long-time friend and a beneficiary under the previous will, stated that, except for a few days while in the hospital, he was never of unsound mind.

The evidence would not compel a finding of undue influence.

■ The real question in this case is whether, considering the confidential relationship that the court found to exist, the Dolloffs had a duty either to reveal to Lunderville that he had only a short time to live or to refuse acceptance of the deed and bequests. The contestants attack the agreement made between Lunderville and the Dolloffs and seek to set it aside and impose a constructive trust on the property. They claim that considering the short time Lunderville was with them, the Dolloffs have been unjustly enriched.

The record, however, would support a finding that it was Lunderville who asked the Dolloffs if he could go home with them and that it was his idea to convey his property to them. Although the Dolloffs knew Lunderville had only a short time to live, they could not have known with certainty how long they would have to care for him. It was also findable that it was at his request that they made the arrangement to meet with the lawyer, obtained the doctor's statement as to his competency and accompanied him to his lawyer's office.

The court found that testator was a strong-willed man who did not rely on the Dolloffs to advise him regarding the disposition of his property, but rather relied on his lawyer for legal advice and on his doctors for medical advice. There is no way of knowing whether the Dolloffs and Lunderville had different ideas about how long he would live. He spoke about spending Christmas with them, but the Dolloffs' information in June 1977 was that he could live from one to six months. The fact that he died much sooner, not directly from the brain tumor but from a complication related to it, does not necessarily reflect the expectation of either Lunderville or the Dolloffs at the time the agreement was made.

The court found that there was no breach of a confidential relationship in the failure of the Dolloffs to disclose his short life expectancy. The fact that the Dolloffs received much more for their services than those services might have been worth on the market does not in and of itself justify the imposition of a constructive trust. Lunderville was entitled to convey his property to them for little or nothing, and there was evidence that he thought highly of them and liked them and their children.

On the whole, the evidence does not require "a finding of influence, acquired and abused, or a confidence, reposed and betrayed." *Powley v. Lessard*, 117 N.H. 991, 994, 380 A.2d 681, 683 (1977); *Cornwell v. Cornwell*, 116 N.H. 205, 209, 356 A.2d 683, 686 (1976). The testator, although in ill-health and aware of the seriousness of his illness, was free to conclude that it was in his best interest to live with the Dolloffs rather than in a nursing home. Even if he was not sure of how long he had to live, he could freely decide to convey his farm to the couple in return for their promise to care for him for the remainder of his life. The court found no abuse of a confidential relationship and we are not at liberty on the facts presented to reach a contrary conclusion. *Wheelen v. Robinson*, 117 N.H. 1032, 381 A.2d 742 (1977); *Powley v. Lessard supra.*

*Exceptions overruled.*

All concurred.