Carroll
No. 80-093

MERRIMACK INDUSTRIAL TRUST

v.

THE FIRST NATIONAL BANK OF BOSTON *& a.*

March 16, 1981

*Randall F. Cooper*, of North Conway, by brief and orally, for the plaintiff.

*James R. Patten*, of Ossipee, by brief and orally, for the First National Bank of Boston.

*Michael E. Gould*, of Meredith, by brief for David S. Sands.

BOIS, J.  The issue raised in this appeal is whether the trial court erred in finding that the mortgagee-bank had exercised good faith and reasonable diligence in conducting a foreclosure sale of property owned by the plaintiff and that the buyer at the sale was a bona fide purchaser for value. We find no error and affirm.

In 1972 the plaintiff, Merrimack Industrial Trust, by separate deeds, acquired two adjoining parcels of real estate in the town of Conway. Because of the unity of ownership, the town thereafter assessed real estate taxes on these properties as one parcel. On the larger of the two parcels was the Conway Shopping Plaza; on the smaller parcel was a Texaco gasoline and service station. The plaintiff had purchased both parcels subject to outstanding mortgages, and the Texaco parcel was conveyed to the plaintiffs subject to a mortgage held by the defendant, The First National Bank of Boston. The language of the mortgage deed to the Texaco parcel required the mortgagor "to pay when due all taxes . . . whether on the mortgaged premises or on any interest therein. . . ." To assure the fulfillment of this obligation the mortgage instrument provided for the establishment of an escrow account, whereby the mortgagor would pay the bank an amount of money which the bank deemed sufficient to pay the property taxes. These monies were to be held in escrow and *"applied by the holder to or toward the payment of said taxes. . . ."* (Emphasis added.) Because the town assessed both parcels as one unit, the escrowed amount was insufficient to pay the total taxes.

For the years 1973, 1974 and 1975, the bank forwarded directly to the town, checks drawn payable to the tax collector of the Town of Conway for payment of that portion of the taxes due on the Texaco lot. In 1977 the check for the 1976 tax escrow payment was made payable to the tax collector of the Town of Conway and deliv-

ered to the plaintiff's sublessee with instructions to have payment made to the town, and to provide the bank with a base tax receipt for the entire parcel. This was done because at that time the bank could not contact the plaintiff, and the sublessee was dealing directly with the bank. The cancelled check was returned to the defendant bank but no evidence of a paid tax receipt was provided.

Commencing with the nonpayment of the entire 1976 tax levy, the bank began to receive notices of tax sales from the town. On October 26, 1977, the bank learned that the Texaco parcel and the shopping center parcel had been sold on June 30, 1977, at a tax sale as a single unit to the Town of Conway because of the non-payment of the entire 1976 property tax levy on both parcels. The defendant bank thereafter conditioned the release of the escrow funds on the plaintiff paying all of the property taxes and showing a receipt of payment from the town. The plaintiff failed to comply and the defendant bank, upon the continued receipt of tax sale notices, demanded payment of the "on demand" note. Upon failing to receive payment, the bank foreclosed on the Texaco parcel in 1979. The sale was subject to unpaid taxes. The plaintiff had not paid the real estate taxes assessed by the town for three years on the entire two-parcel unit, and the aggregate of all the unpaid taxes was more than the value of the Texaco parcel. The plaintiff paid the 1976 taxes shortly after the foreclosure sale.

After adjourning the sale for three weeks from the original date set for the sale to allow the plaintiff time to seek refinancing, the bank, on May 18, 1979, held the foreclosure sale on the Texaco parcel. The bank entered a bid of $9,000 and the other defendant in this appeal, David S. Sands, bid $9,050. The bank accepted Sands' bid and delivered to him a foreclosure deed which he recorded. On this date the monthly payments were current and the tax escrow account held $1,419. The master found that the bank was entitled to foreclose because the 1976, 1977, and 1978 taxes were unpaid.

The plaintiff trust brought a petition in superior court to set aside the foreclosure sale and named the bank and Sands as defendants, alleging that the bank did not use due diligence and did not exercise good faith in conducting the sale. The plaintiff also claimed that Sands was not a bona fide purchaser for value without notice because he had knowledge of the alleged misconduct of the bank. Both defendants denied these allegations, and the bank filed a motion to dismiss under RSA 479:25 II (Supp. 1979), asserting that the failure of the plaintiff to seek injunctive relief

prior to the foreclosure sale barred any further action by the mortgagor. The plaintiff objected to the motion, a hearing was held and *Wyman*, J., denied the motion with the proviso that matters leading up to the foreclosure sale could not be litigated except as they related to the bank's duty to exercise good faith in conducting the sale.

After a hearing on the merits, the Master (*Charles T. Gallagher*, Esq.) dismissed the petition to set aside the sale and made findings of fact and rulings of law contrary to those sought by the plaintiff. On January 4, 1980, the report of the master was approved by *Wyman*, J.

The plaintiff first alleges that the defendant bank breached its duty to exercise good faith in conducting the foreclosure sale because it did not have a right to foreclose. It claims that the default was caused either in whole or in part by the bank's failure to collect a sum sufficient to pay the taxes in full. The language of the mortgage instrument plainly imposed a duty upon the mortgagor to pay all taxes assessed upon the mortgaged Texaco property when due. The escrow fund established by the parties was a mechanism whereby the prompt payment of these taxes would be assured. The language of the mortgage, which provided that the monies forwarded by the plaintiff to the escrow account would be applied *to or toward* the payment of taxes, clearly created an option on the part of the bank as to the manner by which it chose to assure payment. The bank had the choice of either paying the property taxes *to* the town directly, as it had done prior to 1977, or of forwarding monies to the plaintiff *toward* the payment of the taxes.

■ Although the mortgage instrument provided that the bank would determine the dollar amount of the mortgagor's payments into the escrow fund, and further created an option on the part of the bank as to the manner by which these funds would be used to assure payment of the taxes, these provisions did not supercede the obligation of the plaintiff to pay the taxes assessed on the mortgaged property. Accordingly, the plaintiff's failure to satisfy this obligation constituted a breach of an express condition of the mortgage sufficient to authorize foreclosure by the mortgagee-bank. *See Simon v. New Hampshire Sav. Bank*, 112 N.H. 372, 376, 296 A.2d 913, 916 (1972).

■ The plaintiff also asserts that the failure of the town to assess the two parcels separately, and the failure of the bank to enforce this alleged obligation on the part of the town, constituted

a violation of the duty to exercise good faith in conducting the foreclosure sale. The master found that the plaintiff had tried unsuccessfully to have the town assess the parcels separately. The record contains testimony that the bank also unsuccessfully made such attempts. Assuming that the town, which is not a party in this appeal, may have had an obligation to assess the two parcels separately under these circumstances, *see Fearon v. Town of Amherst*, 116 N.H. 392, 393–94, 360 A.2d 127, 128 (1976); RSA 75:9, we cannot find any authority or language in the mortgage contract which imposes a derivative duty on the bank to affirmatively seek to enforce a separate assessment of these two parcels from the town. Without such a duty, the bank acted in good faith in foreclosing on the Texaco parcel because of the plaintiff's breach of its mortgage covenant to pay property taxes.

■■ The plaintiff argues that the bank breached its duty to use reasonable diligence to obtain the highest possible price for the Texaco parcel at the foreclosure sale. *See Lakes Region Fin. Corp. v. Goodhue Boat Yard, Inc.*, 118 N.H. 103, 107, 382 A.2d 1108, 1110–11 (1978). Specifically, the plaintiff asserts this breach of duty on the ground that the bank failed to establish an upset price. *See id.* at 107, 382 A.2d at 1111. Although a mortgagee-bank has a right to purchase property at a foreclosure sale, it does not have the right to sell the property to the detriment of the mortgagor. *See Wheeler v. Slocinski*, 82 N.H. 211, 214–15, 131 A. 598, 600–01 (1926). The mortgagee, in protecting both itself and the mortgagor, has a fiduciary duty to bid at the sale to assure a fair price. *Reconstruction &c. Corp. v. Faulkner*, 101 N.H. 352, 360–61, 143 A.2d 403, 409–10 (1958).

■ The master found that in addition to the town's involvement in the tax problems, it had issued an order requiring that the Texaco parcel be connected to a new sewer system. One month prior to the foreclosure sale the bank appraised the Texaco parcel, concluding it had a value of approximately $30,000 were it used as a parking lot for the adjacent shopping center. Appraising the parcel for use as a gas station, at the time and under the circumstances of foreclosure, the bank concluded that the property had no value. We agree with the master that the bank's failure to set an upset price did not constitute a lack of due diligence.

The plaintiff next asserts that the failure of the bank to adjourn the sale constituted a breach of its duty to use reasonable diligence to obtain the highest possible price. In *Wheeler v. Slocinski* this court held that the proper standard for determining the lack of

due diligence is "whether a reasonable man . . . would have adjourned the sale." 82 N.H. at 215, 131 A. at 601. We further held therein that adjournment might be required when it would result in a sale at a substantially higher figure and only when it would not lessen the security of the debt or enhance the risk of loss by delay. *Id.* at 214, 131 A. at 600.

The standard for reviewing the factual determinations of a master "is not . . . whether on the reported evidence, the members of this court would find as the master has found, but whether any reasonable man could so find." *Brown v. Mary Hitchcock Memorial Hosp.*, 117 N.H. 739, 744, 378 A.2d 1138, 1141 (1977), *quoting Weeks v. Morin*, 85 N.H. 9, 12, 153 A. 471, 472 (1931).

■ The master found that further adjournment of the foreclosure sale would not have produced a different result as to the number of bids offered and that it would more likely than not have lessened the security for the debt owed because the risk of loss increased daily. Ultimately, the master was unable to find that all of the factors surrounding the May 18, 1979 sale, including the fact that the bank previously had adjourned the sale for three weeks to allow the plaintiff the opportunity to seek refinancing, exhibited a lack of due diligence on the part of the bank in refusing to further postpone the sale. We therefore conclude that the plaintiff has not met its burden of proving lack of due diligence under the *Wheeler* standard and, further, that the findings of the master were amply supported by the evidence and are not erroneous as a matter of law. *Lakes Region Fin. Corp. v. Goodhue Boat Yard, Inc.*, 118 N.H. at 107, 382 A.2d at 1111.

■ Because we have held that the bank had a right to foreclose on the property and that it properly conducted the foreclosure sale, it follows that the defendant buyer was a bona fide purchaser for value and we so hold.

*Affirmed.*

All concurred.