Strafford
No. 82-382

DANIEL H. CARROLL & a.

v.

RONALD R. DAIGLE

July 13, 1983

*Barrett & McNeill P.A.*, of Dover (*R. Peter Taylor* on the brief and orally), for the plaintiffs.

*Coolidge Professional Association*, of Somersworth (*Ronald P. Indorf* on the brief and orally), for the defendant.

DOUGLAS, J. The plaintiffs appeal from the Superior Court's (*Souter*, J.) approval of a Master's (*Gary R. Cassavechia*, Esq.) recommendation that their petition for declaratory judgment relating to an option to repurchase realty be dismissed. We affirm.

The case was submitted on an agreed statement of facts. The plaintiffs, Daniel H. and Mary Carroll, purchased a home in Somersworth in 1955. In 1975, the plaintiffs fell behind in their mortgage payments, and the Farmers Home Administration (FHA) instituted foreclosure proceedings on the property. To avoid foreclosure, the plaintiffs entered into an agreement with the defendant, Ronald Daigle, and his former wife whereby the property was conveyed to the Daigles for $20,000, the amount of the outstanding FHA mortgage. In return, the plaintiffs took back a three-year lease, which contained the following option to repurchase:

> "At any time *during the term of this lease*, provided that all rental obligations are current, Lessee [the plaintiffs], for good and valuable separate consideration hereby acknowledged by Lessor [the Daigles], may purchase the demised premises from Lessor, upon payment to Lessor of an amount necessary to pay off any mortgage indebtedness Lessor is carrying on the demised premises plus an additional payment of One Thousand Three Hundred Twenty ($1,320.00) dollars."

(Emphasis added.) Neither the lease itself nor the option-to-buy clause contained a renewal provision. The $1,320 represented a commission to the Daigles, who were local real estate agents.

The agreement also provided that in the event of any default by the plaintiffs under the lease, the Daigles were entitled to sell the property and to retain a six percent sales commission plus one-half of the equity. In addition, the plaintiffs agreed to pay all the expenses of the property, including the mortgage, property taxes, and insurance. In order to purchase the property, the Daigles

obtained bank financing and gave a mortgage on the house as security for the loan.

The three-year lease and option to buy expired on November 20, 1978, without the plaintiffs' having exercised the option. The parties made no express agreement to extend the plaintiffs' tenancy, and the plaintiffs continued to live in the house under the terms of the expired lease.

In the spring of 1980, the defendant refinanced the property after acquiring full title to it in a divorce action. He requested the plaintiffs to pay increased rent to cover the higher monthly mortgage payments. The plaintiffs agreed to do so, but they immediately applied to obtain FHA financing to repurchase the property under the option to buy contained in the expired lease. In November 1980, the plaintiffs received approval from the FHA in the amount of $32,000; however, the defendant refused to reconvey the property for less than fair market value, which at that time was approximately $50,000.

The plaintiffs then brought this declaratory-judgment action, seeking a ruling that they had a present right to exercise the option to repurchase as a term of their holdover tenancy or, in the alternative, that the defendant held title to the property under a constructive trust in favor of the plaintiffs. A master recommended that the plaintiffs' petition be dismissed on the grounds that the option to repurchase could be exercised only during the term of the lease and that the option did not extend into the holdover tenancy. The master also found no basis for imposing a constructive trust. The superior court approved the master's report, and the plaintiffs pursued this appeal.

■ The first issue is whether the plaintiffs' holdover tenancy included, as a term, the option to repurchase contained in their expired lease. It is well established in this State that a tenant who holds over after the expiration of a term lease and pays rent is considered, at best, a tenant at will. *Prout's v. McIntyre*, 94 N.H. 135, 137, 48 A.2d 487, 488 (1946); *Russell v. Fabyan*, 34 N.H. 218, 223 (1856). The tenancy continues "upon the same terms, so far as they are applicable, of . . . [the] previous lease." *Id.*

■■ A holdover tenancy on the same terms as in the original lease is generally recognized as a *new* landlord-tenant relationship, which is distinct from the continuation of a tenancy based upon exercise of a renewal term of the lease or upon a subsequent express agreement between the parties. 1 AMERICAN LAW OF PROPERTY § 3.83, at 361–62 (A. J. Casner ed. 1952). Treating a holdover tenancy as a new tenancy is consistent with the fact that, at the outset of the

holdover tenancy, the landlord may elect to treat the tenant "as a trespasser, evict him or hold him as a tenant." *Muse v. Merrimack Valley Nat'l Bank*, 114 N.H. 700, 702, 327 A.2d 719, 721 (1974).

Although this court has not previously ruled on the precise issue before us in this case, courts in other States have had the opportunity to determine whether an option to purchase contained in a written lease with no renewal provision continues as a term of a holdover tenancy. *See generally* Annot., 15 A.L.R.3d 470, 489–95 (1967). As the plaintiffs correctly note, some courts have held that a holdover tenancy continues the terms of the expired lease, including the repurchase option, even where the option expressly states that it is exercisable only during the term of the lease. *See, e.g., Gressitt v. Anderson*, 187 Md. 586, 590–91, 51 A.2d 159, 160–61 (1947).

More persuasive, however, are the decisions of other jurisdictions which hold that a purchase option which may be exercised only during the term of the lease does not carry over into the holdover tenancy. These decisions are based on the fact that a provision which is expressly limited to the effective period of the lease cannot be considered to be applicable to the new holdover tenancy. *See, e.g., Wanous v. Balaco*, 412 Ill. 545, 548–49, 107 N.E.2d 791, 792–93 (1952); *Vernon v. Kennedy*, 50 N.C. App. 302, 303–04, 273 S.E.2d 31, 32 (1981). Additionally, other courts have reached the same conclusion, that a purchase option expires with the written lease, by reasoning that the option provision was an independent covenant which did not become one of the terms of the holdover tenancy. *See, e.g., Spaulding v. Yovino-Young*, 30 Cal. 2d 138, 141, 143–44, 180 P.2d 691, 692, 694 (1947).

Despite the plaintiffs' claim that the parties intended the repurchase option to continue as a term of the holdover tenancy, a plain reading of the option clause militates against such an interpretation. The option was expressly made applicable "during the term of this lease"; it was also, by its terms, supported by "separate consideration." These factors, combined with the fact that the right to exercise the repurchase option was conditioned upon "all rental obligations . . . [being] current," *see id.* at 142, 180 P.2d at 693, lead us to the conclusion that the option could not reasonably be considered to be a term of the *holdover* tenancy.

■ The reference in another clause of the lease to the landlord's reasonable rights of entry and inspection "during the term of this lease and any renewal thereof" does not compel the conclusion either that the parties intended or anticipated a *renewal* of the original lease upon all its terms, or that the holdover tenancy could be construed as such a renewal. We hold that the master correctly

ruled that the repurchase option, as contained in the plaintiffs' three-year written lease, was not a term of their holdover tenancy. *Cf. Buxton v. Glennon*, 122 N.H. 674, 678, 448 A.2d 420, 422 (1982) (tenant/optionee's remedy for wrongful eviction, prior to expiration of lease containing option to buy, is action at law against landlord, not extension of option to buy).

We also affirm the master's ruling that the plaintiffs were not entitled to equitable relief from their untimely exercise of the repurchase option. We have held that

> "equity will grant relief to a lessee who has failed to exercise the option within the required time, if the delay is slight, the delay has not prejudiced the landlord, and the failure to grant relief would result in such hardship to the tenant as to make literal enforcement of the . . . [option] provision unconscionable."

*Fletcher v. Frisbee*, 119 N.H. 555, 558, 404 A.2d 1106, 1108 (1979). As the master pointed out, a twenty-month delay by the plaintiffs between the expiration of their written lease and their application for financing can hardly be considered slight. He also found that literal enforcement of the repurchase option would not result in such hardship to the plaintiffs as to be unconscionable, because they would be in the same position as they would have been if the imminent foreclosure on their property in 1975 had actually occurred. The granting of equitable relief rests with the sound discretion of the trier of fact depending on the circumstances of each case, and the record in this case does not compel us to disturb the master's findings. *See Derouin v. Granite State Realty, Inc.*, 123 N.H. 145, 148, 459 A.2d 231, 233 (1983).

Alternatively, the plaintiffs argue that, under the circumstances of this case, the master erred in not imposing a constructive trust for their benefit. The plaintiffs properly cite the prerequisites for the imposition of a constructive trust: the existence of a fiduciary or confidential relationship, *Cornwell v. Cornwell*, 116 N.H. 205, 208, 356 A.2d 683, 685–86 (1976); *Kachanian v. Kachanian*, 100 N.H. 135, 137, 121 A.2d 566, 568 (1956), and the potential for unjust enrichment if equitable relief is not granted, *Lamkin v. Hill*, 120 N.H. 547, 551, 419 A.2d 1077, 1079–80 (1980).

Although the plaintiffs on appeal assert the existence of a fiduciary relationship between the parties based on a joint venture, the master made no finding regarding a fiduciary relationship. Given his ultimate determination that no basis existed for imposi-

tion of a constructive trust, we must assume that he necessarily found that no fiduciary relationship existed between the plaintiffs and the defendant. *See Buxton v. Glennon*, 122 N.H. at 676, 448 A.2d at 421; *Lepage v. L'Heureux*, 119 N.H. 201, 202, 399 A.2d 977, 978 (1979). In light of the limited evidence submitted to the master, contained in the agreed statement of facts and the lease, we find no basis for finding a fiduciary relationship between the parties.

 A confidential relationship can exist whenever "one has gained the confidence of the other and purports to act or advise *with the other's interest in mind*," such as in a family or close personal relationship. *Cornwell v. Cornwell*, 116 N.H. at 209, 356 A.2d at 686 (quoting RESTATEMENT (SECOND) OF TRUSTS § 2 comment b, at 7 (1959)) (emphasis added). In this case, the master found the friendship between the plaintiffs and the defendant insufficient to constitute a confidential relationship. This was a question of fact for him to decide, and because there was sufficient evidence for him to find that the friendship did not rise to the level of a confidential relationship, the finding must stand. *Wheelen v. Robinson*, 117 N.H. 1032, 1037, 381 A.2d 742, 745 (1977).

The facts of this case are substantially similar to those in *Wheelen v. Robinson*. In both *Wheelen* and the instant case, the defendants purchased the plaintiffs' property to forestall a foreclosure, and the defendants gave the plaintiffs the opportunity to repurchase the property. Additionally, neither defendant refused to reconvey the property within the agreed-upon time period, and both defendants "stood ready [to reconvey] far beyond the reasonable time intended by the original commitment" by the plaintiffs. *Id.* at 1035, 381 A.2d at 744.

 Unlike the *Wheelen* case, *id.*, 381 A.2d at 744, the plaintiffs in this case paid rent equivalent to the defendant's mortgage payments, as well as property taxes and insurance. Notwithstanding this fact, the terms of the parties' lease belie the assertion that the defendant was acting in the plaintiffs' interest. The $1,320 real estate commission payable to the defendant upon the plaintiffs' repurchase of the property, and the equal division of any equity remaining after a default under the lease, evince an intent that both parties were to benefit from the lease. Consequently, we see no reason to reach a conclusion contrary to that in *Wheelen v. Robinson*, and accordingly we affirm the master's ruling that the imposition of a constructive trust was not warranted based on the facts of this case.

*Affirmed.*

BOIS, J., did not sit; the others concurred.