JAMES STEPHENS as Guardian ad Litem for ARDRIENNE
STEPHENS, JASON
STEPHENS, NICHOLAS STEPHENS, and ADELITA STEPHENS,
minor children, Petitioners

v.

CECILIA M. STEPHENS, Respondent

High Court of American Samoa
Land and Titles Division

LT No. 37-95

June 3, 1996

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate Judge, and BETHAM, Associate Judge.

Counsel:      For Petitioners, Barry I. Rose
               For Respondent, Afoa L. Su'esu'e Lutu

Opinion and Order:

Plaintiffs Adrienne Stephens, Jason Stephens, Nicholas Stephens, and Adelita Stephens (collectively "the Stephens children"), through their guardian and father James Stephens ("James"), initiated this action against defendant and their mother Cecilia M. Stephens ("Cecilia") to impose a constructive trust on certain land and improvements for the benefit of the Stephens children, and to permanently enjoin Cecilia from selling or otherwise disposing of this property without the court's approval.[1]

We prevented the sale or other disposition of the property, or the disposition of proceeds of any sale, by temporary restraining order entered on October 6, 1995, and preliminary injunction pendente lite entered on November 16, 1995. The case was tried on March 25, 1996, with both counsel present and under notice that we were invoking the directive of T.C.R.C.P 65(a)(2) that the admissible evidence at the hearing on the preliminary injunction application was part of the record in the trial and need not be repeated.

### FINDINGS OF FACT

At issue are two adjacent parcels of individually owned land in the Village of Tafuna, American Samoa, purchased while James and Cecilia were married, and the house on one parcel, constructed after they were divorced. The first parcel is about 0.252 acres ("the smaller parcel"), has a boundary along a public road, and was purchased for $25,000 in February 1987. The second parcel is about 0.5 acres ("the larger parcel"), lies inland of the first parcel, and was purchased for $50,000 in December 1987. Since James is a non-Samoan and cannot take title to individually owned land, and Cecilia is Samoan and can own such land, both parcels were conveyed to Cecilia. However, James paid the consideration.

---

[1] James individually was also a plaintiff when this action was filed. He voluntarily dismissed his cause, in accordance with T.C.R.C.P. 41(a)(1)(i).

James and Cecilia were divorced in 1990. They stipulated that both the smaller parcel and the larger parcel would be awarded to Cecilia, as part of their property division settlement, and the court did so in the decree. At that time, the land was still undeveloped, and Cecilia and the Stephens children were living in rental housing. Also by stipulation, the court required James to pay Cecilia's $350 monthly rent plus reasonable utility charges and various other items and obligations, supplementing $1,000 monthly spousal support directly to Cecilia through August 1994. Cecilia was given legal custody of the Stephens children, subject to James' reasonable visitation rights. James was ordered to pay educational and medical expenses for the Stephens children until majority, but not separate and distinct child support payable to Cecilia.

In late 1990, Cecilia's rental housing was destroyed by fire. She and the Stephens children moved into premises on her family's land in the Village of Pago Pago, apparently rent free, and James improved this housing at his expense. At various times before and after the divorce, and before and after the fire, James urged Cecilia to construct a house ("the house") on the larger parcel. Several months after the fire, she finally agreed orally to this proposal.

Each, however, characterized the purpose of the house differently. James claimed that both he and Cecilia were chiefly motivated to provide both the smaller parcel and the larger parcel and the house in a trust arrangement for the present and long-term benefit of the Stephens children. On the other hand, Cecilia asserted that James mainly desired to end unproductive rent payments, and he was willing to provide her with the house where she and the Stephens children would permanently reside to achieve this goal.

In due course, the house was constructed on the larger parcel. Construction began in 1991. Although some construction is still required, the house was substantially completed for occupancy. Cecilia lived there for a while, but then rented it to another family for a year to have income after James stopped paying spousal support for a time. She was living there again when she was advised by a government prosecutor to move out after an incident in June 1995, which resulted in still pending assault charges against James.

The Stephens children, as well as Cecilia's two children born of a previous marriage and two children born after the divorce, also lived in the house. However, beginning in November 1994, and for most of the time since, the Stephens children and the two older children have been living with James.

The house is large, at some 3600 square feet, with five bedrooms, four baths, and a three-car garage, and was constructed for about $225,000. Using the smaller parcel, the larger parcel, and the house as collateral, James and Cecilia borrowed $150,000 of this amount from the Amerika Samoa Bank for the project. They both executed the promissory note. Cecilia executed the mortgage. James paid the cost of furnishings. He later applied about $50,000 from a certificate of deposit to reduce the outstanding principal and the loan payments from more than $1,700 to $1,242 per month. Cecilia also put some funds into the house from the rent she received. She claimed to have used $600 of the $1,600 monthly rent for this purpose.

James made the loan payments, mostly from funds held by Stephens Distributorship, which was an asset awarded to both James and Cecilia in the divorce proceedings but without delineation either then or as yet on their respective shares. He stopped making payments in May 1995. Amerika Samoa Bank declared the loan in default and set in motion the foreclosure sale process. James declares that he never intended to allow the foreclosure sale and possessed a letter from the bank's attorney assuring him he could forestall the sale by bringing the loan current as late as 24 hours before the sale. The foreclosure sale was scheduled to take place on or about October 16, 1995.

Cecilia, however, feared the looming loss of the house and lacked immediate funds for her support. She claimed that in September 1995, she obtained the bank's permission to sell the smaller parcel free of the mortgage. No written release was produced in evidence. In any event, she then struck a deal to sell the smaller parcel for $30,000, reduced to $28,000 to retain a right of way to the inland parcel where the house is located. The buyer paid Cecilia $15,000 cash, but a written sales contract and other legal steps have not yet been finalized. Immediately, she paid the bank $9,296.73 to bring the loan current. The court holds the bank's cashier check No. 098377, payable to Cecilia in the sum of $3,396.27, representing the unspent balance of the $15,000 payment. James was prompted to commence this action by this sales transaction.

## THE CONSTRUCTIVE TRUST REMEDY

Courts will construct a remedial trust when a person may not in good conscience retain, under the circumstances, the beneficial interest of his or her legal title to property. *Sipili v. Fania*, 17 A.S.R.2d 96, 99 n.1 (App. Div.

1990) (note and accompanying text); *Jennings v. Jennings*, 21 A.S.R.2d 40, 47 (Trial Div. 1992); 76 AM. JUR. 2D *Trusts* § 200 (1992). Courts recognize diverse factors, case-by-case, in deciding upon imposing a constructive trust to resolve a controversy. 76 AM. JUR. 2D *Trusts* § 201 (1992). We will assess the considerations appropriate to this case.

## A. Confidential or Fiduciary Relationship

A confidential or fiduciary relationship will not of itself trigger a constructive trust. 76 Am. Jur. 2d § 208 (1992); *see Jennings*, 21 A.S.R.2d at 47. However, the presence of a relationship of this nature is a notable prelude to imposition of this remedy. *Id.*; *Carrol v. Daigle*, 463 A.2d 885, 888 (N.H. 1983).

James and Cecilia are divorced and have a relationship, at least at face value, at arm's length with one another. They did, however, reach an oral agreement for construction of the house for the benefit of the Stephens children, which might be construed to create a renewed confidential relationship between them. Both James and Cecilia have gone to considerable lengths to discredit each other, perhaps in deference to the equitable maxim that *he who seeks equity must do equity*. While this evidence amplifies the disintegration of their marriage, it misses the mark.

The relationship between Cecilia and the Stephens children is the immediately important consideration. Some jurisdictions, including American Samoa, view the very existence of close family connections as creating, or at least most often creating, a confidential or fiduciary relationship for purposes of imposing a constructive trust. *Jennings*, 21 A.S.R.2d at 47; *Carrol*, 463 A.2d at 888-89. Others consider the mere existence of a close family relationship as inconclusive on the issue of a confidential or fiduciary relationship for this purpose without additional facts to cement this finding. 76 Am. Jur. 2d *Trusts* § 209 (1992). As their mother, coupled with her agreement to construct the house for their benefit, Cecilia had, and still has, a confidential and fiduciary relationship with the Stephens children.

## B. Unjust Enrichment.

Cecilia has held legal title to the smaller parcel and the larger parcel ever since she and James purchased these properties. When James and Cecilia were divorced, she retained that title by virtue of their property settlement agreement and this court's approval, unfettered by any moral

59

obligation respecting that title she may have sensed as owing to James during the marriage. We must, and do, recognize as law in American Samoa that at common law, the holder of legal title to property is the presumed owner of full beneficial title, rebuttable only by clear and convincing evidence of inequity warranting a trust remedy. *See* B. Witkin, 11 *Summary of Cal. Law* § 310 at 1146 (9th ed. 1990); A.S.C.A. § 1.0201(4).

■ Generally, while a factor to consider, the parties need not have entered any agreement as a prerequisite to the imposition of a constructive trust as an equitable remedy. *Adams v. Jankouskas*, 452 A.2d 148 (Del. 1982). Here, we have an agreement in fact: James promised to construct and pay for the house on Cecilia's land for the immediate and long-term benefit of the Stephens children, and Cecilia promised to dedicate the house for this purpose. We have no evidence that James and Cecilia had in mind any formal trust arrangement when they agreed to build the house. However, parties do not need to signify intent to create a trust, either expressly or implicitly, as a prerequisite to imposing a constructive trust. *Adams*, 452 A.2d 148. The agreement between James and Cecilia for the Stephens children's beneficial use of the house was not in writing. However, while generally land titles may not rest on parol evidence, constructive trusts are excepted from the requisite of written evidence under the statute of frauds. *In re Estate of Hock*, 655 P.2d 1111, 1114 (Utah 1982).

■ What is important in a confidential family situation is the breach of reposed trust. The legal titleholder of property must commit some wrong rendering his or her acquisition or retention of the property unconscionable. *CFTC v. Heritage Capital Advisory Services*, 823 F.2d 171 (7th Cir. 1987); *see Jennings*, 21 A.S.R.2d 40; *Easterling v. Ferris*, 61 P.2d 677, 680-81 (Okla. 1982). Permanent improvements such as buildings become part of the realty. W. Burby, *Real Property* § 11 (3rd ed. 1973). Thus, Cecilia gained title to the house when it was constructed on the larger parcel. She was in a superior position to defeat the oral agreement to construct the house for the benefit of the Stephens children. She could effectively divert James' substantial amount of funds already and yet to be expended with the intent to benefit the Stephens children from the planned use of these funds. Amerika Samoa Bank's mortgage interests in the smaller parcel, larger parcel, and the house became her only formidable legal obstacle to dealing with this property to gratify her own interests. When Cecilia entered the pending oral agreement to sell the smaller parcel, she amply demonstrated

60

that with opportunity, she is ready and willing to override the Stephens children's best interests.

Under the circumstances, we will impose a constructive trust on the larger parcel and the house, and a suitable portion of the smaller parcel to enter and depart the larger parcel, and issue several related directives to protect the interests of the Stephens children. The remainder of smaller parcel is not needed to serve those interests and will be excluded from the constructive trust.

## ORDER

1. A constructive trust is imposed on the larger parcel and the house, and a 24-foot wide strip along the southern boundary of the smaller parcel from the public road to the larger parcel, with Cecilia as the constructive trustee and the Stephens children as the beneficiaries.

2. Cecilia as the constructive trustee shall transfer the legal title to the larger parcel and the house, and the 24-foot wide strip in the smaller parcel, to herself and the Stephens children as tenants in common, subject to the existing mortgage interests of the Amerika Samoa Bank. She shall execute a deed of conveyance and any other necessary or appropriate documents to carry out this transfer of title. She shall have the deed, along with this order and any other documents as may be necessary or appropriate for the record, recorded with the Territorial Registrar of American Samoa. Cecilia shall submit all proposed documents intended to comply with this order to this court for approval before the documents are executed and recorded no later than 90 days after the date of entry of this order. James shall pay for the resurvey needed to divide the smaller parcel.

3. Cecilia is appointed as guardian of the estates of the Stephens children. She shall serve in this capacity without bond at this time. However, Cecilia, her officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with her, are permanently enjoined from selling, leasing, encumbering, except for the existing mortgage interests of the Amerika Samoa Bank, or otherwise disposing the larger parcel, the house, or the 24-foot wide strip in the smaller parcel, without the prior order of this court.

4. The remainder of the smaller parcel is not subject to the constructive trust. Cecilia may sell, lease, encumber, or otherwise dispose of this part of the smaller parcel. Any such transaction shall be (a) evidenced by written

documents, and (b) subject to the mortgage interests of the Amerika Samoa Bank and free of those interests only with the bank's prior written consent. We will continue to hold the bank's $3,296.73 cashier's check until we are advised of the proposed disposition of the present agreement to sell the smaller parcel.

5. James shall make each and every payment, in a timely manner, to the Amerika Samoa Bank on the loan for the construction of the house until the loan is paid in full, and shall hold Cecilia harmless from this loan.

6. Cecilia shall maintain the larger parcel and the house, and the 24-foot wide strip in the smaller parcel, in attractive and suitable condition, keep the house in good order and repair, and pay for this maintenance, upkeep and repair.

7. The clerk of the court shall have certified copies of this order delivered to on the Amerika Samoa Bank and the Territorial Registrar of American Samoa.

It is so ordered.