DANIEL HELLMAN AND AIMEE HELLMAN, APPELLANTS, *v.* JOSEPH CAPURRO, HERBERT CAPURRO AND GEORGE CAPURRO, RESPONDENTS.

No. 7978

May 26, 1976                                        549 P.2d 750

*William M. O'Mara,* of Reno, for Appellants.

*Petersen & Petersen,* of Reno, for Respondents.

## OPINION

By the Court, ZENOFF, J.:

In 1963, Aimee Hellman purchased a parcel of property located adjacent to Pyramid Lake from Joseph Capurro and his two sons, Herbert and George, for $176,000.00. The bulk of the purchase price, $156,000.00, was represented by a promissory note secured by a deed of trust which contained the usual provisions requiring that the trustor provide adequate fire insurance payable upon the occurrence of the contingency to the trustor and the beneficiary "as their respective interests may appear." The improvements to the property consisted of a combination bar and restaurant and a residence.

Several years later, the Hellmans experienced a deteriorating financial situation and permitted the policy of fire insurance to lapse. Accordingly, to protect their interest, the Capurros procured a policy in the amount of $35,000.00.

In January of 1969, the Hellmans leased the premise to Condor Chemical Company for a period of 99 years. At that time, the Capurros were reimbursed for the sums they expended for the insurance policy plus interest. The policy was then transferred to Aimee Hellman listing the Capurros as the "loss payable mortgagees."

In March of 1969, the bar-restaurant and residence were totally destroyed by fire. Thereafter, a law suit was instituted by the Hellmans seeking a determination as to which party was entitled to the insurance proceeds. Prior to the resolution of that suit, the Hellmans defaulted on the promissory note and

the Capurros compelled the trustee to sell the property. The property, subject to their encumbrance in the approximate amount of $65,400.00, was purchased by the Capurros for $20,000.00. They subsequently commenced a suit for the deficiency which was consolidated with the earlier suit filed by the Hellmans.

For the reason that the property was valued well in excess of the encumbrance, the trial court ruled that no action for a deficiency judgment could lie. See NRS 40.459. Two M.A.I. appraisers testified at trial as to the valuation they placed on the property as of the date of the trustee's sale. The appraiser retained by the Capurros valued the property at $117,600.00, nearly double the amount of the Hellmans' indebtedness. The court-appointed appraiser valued the property at $250,000.00.

As to the insurance proceeds, the court ruled that the Capurros' right thereto had vested on the day of the fire and was not divested by the foreclosure proceedings or by the fact that no action for a deficiency judgment could lie.

1. This latter ruling was erroneous. Finding that no action for a deficiency judgment will lie for the reason that the deed of trust beneficiary purchased the property and obtained value in excess of the indebtedness is equivalent to finding that the trustor's debt has been extinguished. Rosenbaum v. Funcannon, 308 F.2d 680 (9th Cir. 1962); Whitestone Savings & Loan Ass'n v. Allstate Ins. Co., 270 N.E.2d 694 (N.Y. 1971); Northwestern National Ins. Co. v. Mildenberger, 359 S.W.2d 380 (Mo.App. 1962). A mortgagee or a beneficiary to a deed of trust is entitled to only one satisfaction of his debt. Holloway v. Barrett, 87 Nev. 385, 487 P.2d 501 (1971). Here, in addition to receiving approximately $110,600.00 plus interest from the date the property was sold, the Capurros received value of at least $52,000.00 over and above the outstanding indebtedness on the promissory note. It cannot in fairness be asserted that the Hellmans' obligation to the Capurros remains unsatisfied or that the Capurros were injured from the events which culminated in the surrender of the property to them.

On the date of the fire, the Capurros possessed a right to the insurance proceeds "as their interest appeared." That right was contingent upon the existence of an underlying unsatisfied obligation running from the Hellmans to the Capurros. Upon satisfaction of that obligation, the right was extinguished. The trial court, by ruling that the Capurros were entitled to no deficiency judgment implicitly ruled that the Hellmans' obligation

to the Capurros had been satisfied. Thus, the insurance proceeds rightfully should have been awarded to the Hellmans.

2. Absent an election to rebuild on the Hellmans' part, the Capurros may have had an absolute—"vested," as they style it—right to have the policy proceeds applied in reduction of their $65,000 claim. They did not, however, enforce that right before causing foreclosure sale of the Hellmans' property to collect their unreduced claim. Had they done so, both the Hellmans' position at the trustee's sale, and their own, would have been materially different.

Particularly, we note that had the Capurros' apparent bidding power at the sale been reduced to some $30,000, through application of the $35,000 policy proceeds to the Hellmans' $65,000 debt, the Hellmans could have sought to protect their property by raising only that smaller amount to bid. They might, at least, have sought to salvage some of their equity, by encouraging potential buyers to appear and to bid above the reduced $30-odd thousand figure necessary to satisfy the Capurros. Indeed, they might well have found a lender who would have provided refinancing of their reduced debt to the Capurros and thereby have prevented the sale altogether.

The Capurros, however, elected not to cause the $35,000 to be applied to their claim before the sale. Not having done so, and having through the sale received real property more than equal in value to their unreduced debt, it seems clear that the $35,000 insurance proceeds must be regarded as the Hellmans' property, free from the Capurros' extinguished claim. Accordingly, the Hellmans are awarded the principal sum. No interest shall be allowed. NRAP Rule 37.

3. The Hellmans' second assignment of error, that the memorandum of costs and disbursements filed by the Capurros sets forth an excessive amount, is inappropriately raised at this juncture in the proceedings. NRS 18.110; Reno Electrical Works, Inc. v. Ward, 53 Nev. 1, 290 P. 1024 (1930).

Reversed.

GUNDERSON, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.