Rockingham
No. 83-423

CARROLS EQUITIES CORPORATION

v.

JOHN DELLA JACOVA

February 21, 1985

*Shaines, Madrigan, & McEachern*, of Portsmouth (*Charles Cross* on the brief and orally), for the plaintiff.

*Taylor, Keane & Blanchard P.A.*, of Portsmouth (*Thomas M. Keane* on the brief and orally), for the defendant.

SOUTER, J.   The defendant appeals from a deficiency judgment entered after foreclosure of a mortgage, claiming that the verdict is tainted by procedural error and is excessive. We affirm.

In 1970 the plaintiff, Carrols Equities Corporation, paid $60,000 for land in Exeter on which it constructed a building and which it then mortgaged to Loyal Protective Life Insurance Co. to secure a note for $165,000. After interim transactions not here relevant, Carrols sold the property to the defendant, John Della Jacova, in consideration of his assumption of the liability under the mortgage and note. Carrols remained secondarily liable to Loyal and acted as Loyal's agent for collection. In 1976 Della Jacova began to default on installments, which Carrols then paid to avoid foreclosure. In 1977 Carrols brought this action against Della Jacova to recover its payments to Loyal. In the same year Della Jacova stopped making any payments. In 1980 Carrols purchased the note and mortgage from Loyal's successor in interest.

Both parties attempted without success to find a buyer for the property, and in 1980 Carrols foreclosed in the exercise of the statutory power of sale. RSA 479:25. At the sale, Carrols was the sole bidder, at $90,000. Four months later Carrols conveyed the property in an arm's length transaction for the same price. The following year the property was sold, successively, for $160,000 and $190,000.

In 1981 Carrols sought summary judgment both for its payments to Loyal and for a deficiency judgment following the foreclosure. The Master (*Charles T. Gallagher*, Esq.) denied summary judgment, but he later allowed Carrols to amend its pleadings to claim the deficiency, and after trial on the merits he recommended a deficiency judgment of $113,057.19. Following approval of the master's report by the Superior Court (*Nadeau*, J.), Della Jacova appealed. We affirm.

■ Della Jacova maintains first that it was error to allow amendment of the pleadings to include the claim for deficiency, which did not arise until after Carrols had brought the original writ. He argues that the amendment stated an entirely different claim from the original pleadings and was thus forbidden under the rule stated in *V.S.H. Realty, Inc. v. City of Rochester*, 118 N.H. 778, 781, 394 A.2d 317, 319–20 (1978), that "liberal amendment of pleadings . . . [is allowed] only if the amendment does not change the cause of action or call for substantially different evidence."

We find no violation of the rule in *V.S.H. Realty*. All of Carrols' claims were based on Della Jacova's obligations under the note and mortgage that he had assumed. Under the original pleadings Carrols brought action as a surety who had made payments for which Della Jacova was principally liable. *See Markarian v. Morazines*, 83 N.H. 479, 481, 144 A. 265, 266 (1929). Thus, it was a subrogation action in which Carrols asserted a claim derived from the right of the creditor and mortgagee. *Id.* Under the pleadings as amended Carrols claimed as an assignee of the mortgagee entitled to the deficiency.

■ The subrogation and the assignment enabled Carrols to plead one continuing cause of action, the failure of Della Jacova to pay what he owed under the note that he had agreed to honor. The amendment did not state a new cause of action and hence was technically proper. Moreover, the amendment did not call for substantially different evidence from the original claim or prejudice Della Jacova in any way. It gave no surprise, and Carrols concedes that interest on the deficiency judgment runs only from the date of the amendment. The amendment was therefore properly allowed.

Next, Della Jacova invokes the familiar rule under *Wheeler v. Slocinski*, 82 N.H. 211, 131 A. 598 (1926), that in foreclosure proceedings a mortgagee is obligated to exercise due diligence to protect the interest of the mortgagor. Della Jacova argues that the delay of more than two and one-half years between final default and the exercise of foreclosure rights indicates a failure to exercise such due diligence. During that period interest charges grew, inflating the debt and the consequent deficiency judgment. Della Jacova seeks a reduction in the judgment to relieve him of the consequences of the delay.

■■ The mortgagor has the burden of proving a lack of due diligence, *Merrimack Industrial Trust v. First Nat. Bank of Boston*, 121 N.H. 197, 202, 427 A.2d 500, 504 (1981), and the record before us indicates that the master correctly concluded that Della Jacova

had failed to carry that burden. Carrols could not have begun foreclosure sooner because it did not buy the interest of the mortgagee until January 1980, after which it proceeded promptly. There is no merit in the argument that Carrols nonetheless should be regarded as standing in the mortgagee's shoes before 1980, since the evidence was uncontroverted that Carrols could not have bought the mortgage before it did. The most that we can say Carrols could have done before 1980 was to induce foreclosure by refusing to make the installment payments in Della Jacova's stead. In that event, of course, Carrols would have been liable as a surety for any deficiency. *See Markarian v. Morazines supra.* Hence, to precipitate foreclosure would have invited a liability which Carrols apparently would have been unable to satisfy before 1980. Due diligence is not self-sacrifice, and Carrols is not to be faulted for its timing.

Della Jacova's third and fourth assignments of error raise one claim: that, for purposes of defining the mortgagee's duty and calculating any deficiency after foreclosure, the mortgagor is entitled to be credited with the fair market value of the property. The master refused to employ fair market value for this purpose. Della Jacova argues that the resulting deficiency was therefore excessive.

It is axiomatic that "a mortgagee who purchases the mortgaged property at his own foreclosure sale is obligated to credit the mortgagor with the value of the property foreclosed, unless he bids for it more than it is worth, in which event he is obligated to credit the mortgagor with the net amount of his bid." *Phinney v. Bank,* 91 N.H. 184, 189, 16 A.2d 363, 367 (1940). Della Jacova's espousal of fair market value for this purpose, however, runs counter to clearly established authority in this jurisdiction. "As the rule is understood, a fair and reasonable price under the circumstances in which the mortgagee acts is what is required . . . . The test is not 'fair market value' . . . nor is the mortgagee bound to give credit for the highest possible amount which might be obtained under different circumstances, as at an owner's sale." *Reconstruction &c. Corp. v. Faulkner,* 101 N.H. 352, 361, 143 A.2d 403, 410 (1958) (citations omitted); *Silver v. First National Bank,* 108 N.H. 390, 392, 236 A.2d 493, 495 (1967).

The standard is the same when the mortgagee is the sole bidder. *Meredith v. Fisher,* 121 N.H. 856, 859-60, 435 A.2d 536, 538 (1981). *Cf. Danvers Savings Bank v. Hammer,* 122 N.H. 1, 440 A.2d 435 (1982) (fair market value the standard to measure deficiency or mortgagor's damages under Massachusetts law, when mortgagee has failed to use due diligence). Therefore, the master was clearly correct in refusing to rule that fair market value was the touchstone of the allowable deficiency judgment.

The only remaining question before us is whether the master could have found that Carrols had obtained a fair price under the circumstances, for purposes of calculating the actual deficiency in this case. The record sustains the master's conclusion that the price of $90,000 was fair under the circumstances.

There was evidence that before the sale each party had attempted to find a buyer for the property at a higher price. At the time of the sale the building had sat empty for some time, had seriously deteriorated, and had been vandalized. Following the sale Carrols listed the property with a broker, and four months after the sale Carrols resold it for the same price it had bid. The master was warranted in finding that this was an arm's length transaction.

There was some contrary evidence, however. Della Jacova produced the assessor of Exeter, who testified that the sale price of $190,000 for the property in late 1981 reflected the value of the property at the time of foreclosure. But this testimony was riddled by impeachment: the assessor had not seen the property before the foreclosure and did not know what improvements had been made after foreclosure. The master was therefore entitled to reject the witness' opinion, *see Hackett v. Perron*, 119 N.H. 419, 421, 402 A.2d 193, 194 (1979), and to conclude that the bid price at the foreclosure sale was fair in the circumstances.

Since we find no error, the judgment is affirmed.

*Affirmed.*

All concurred.