ANTHONY R. PANTANO AND ARLENE L. PANTANO, APPELLEES, V.
MARYLAND PLAZA PARTNERSHIP, A NEBRASKA GENERAL
PARTNERSHIP, APPELLEE, AND FIREMAN'S FUND INSURANCE CO., A
CORPORATION, INTERVENOR-APPELLANT.

507 N.W.2d 484

Filed November 5, 1993. No. S-91-805.

Ronald H. Stave, of Stave & Coffey, P.C., for intervenor-appellant.

Leo A. Knowles and Robert G. Dailey, of McGrath, North, Mullin & Kratz, P.C., for appellees Pantano.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

WHITE, J.

This case arose from a deficiency judgment action in which the trust deed beneficiary sued the trustor and the beneficiary's insurer intervened. The district court found that no deficiency judgment was warranted and dismissed the action against the trustor. The district court also dismissed the insurer's petition in intervention. The insurer appeals. We reverse, and remand with directions.

In January 1984, Maryland Plaza Partnership executed a promissory note for $734,260 in favor of Panalene Realty Company. The note was secured by a trust deed for two parcels of real property: 1325 South 72d Street and 1217 South 72d Street, Omaha, Nebraska (the trust properties). In June 1984, Panalene assigned all of its interest in the note and trust deed to Anthony R. and Arlene L. Pantano.

In September 1988, the trustee filed a notice of default. Maryland Plaza failed to cure the default within 30 days. The Pantanos declared the entire balance of the note immediately due and payable, and instructed the trustee to sell the trust properties.

In October 1988, the Pantanos purchased fire insurance from Fireman's Fund Insurance Co. on both trust properties. The Fireman's Fund policy protected the Pantanos' interest "as mortgagees." The Fireman's Fund policy did not protect Maryland Plaza's interest in the trust properties.

The trust properties were also insured against fire damage under a second policy. United Fire & Casualty Company issued a fire insurance policy insuring the interests both of the Pantanos and of Maryland Plaza. Maryland Plaza later assigned its interest in this policy to the Pantanos.

In January 1989, a fire occurred at 1217 South 72d Street, one of the trust properties. As a result of the fire, Fireman's Fund paid the Pantanos $155,000, the face amount of the policy on that property. United Fire & Casualty Company paid the Pantanos $192,500.

In July 1989, the trustee conducted a sale of the two trust

properties, in accordance with the Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1001 et seq. (Reissue 1986 & Cum. Supp. 1988). At the trustee's sale, the Pantanos purchased the properties for $500,000. At the time of sale, Maryland Plaza owed the Pantanos the following amounts: $750,903.35 in principal on the note, $115,596.82 in accrued interest on the principal, $50,424.64 for real estate taxes, $201.78 for costs of public sale, and $17,856.10 in trustee's fees. In all, the total indebtedness of Maryland Plaza was $934,982.69.

The Pantanos sued Maryland Plaza, seeking a deficiency judgment. Fireman's Fund intervened, seeking to recover the proceeds that it had paid to the Pantanos. The trial was held on stipulated evidence, and the parties submitted written arguments. Among other things, the Pantanos and Fireman's Fund stipulated:

> Without conceding one way or the other whether the mortgage indebtedness due from [Maryland Plaza] to [the Pantanos] has been paid in full [the Pantanos] may not recover a deficiency judgment against [Maryland Plaza] pursuant to Nebraska Revised Statute Section 76-1013 since the fair market value of the property at least equals the outstanding, outstanding [sic] indebtedness to [the Pantanos].

The district court first dismissed the deficiency judgment action against Maryland Plaza. The district court then found generally for the Pantanos and against Fireman's Fund. The court reasoned that Fireman's Fund was not entitled to recover the proceeds it had paid to the Pantanos until Maryland Plaza's total indebtedness had been paid in full. The district court held that although the Pantanos were unable to obtain a deficiency judgment, the total indebtedness had never been fully satisfied. The district court therefore determined that Fireman's Fund was not entitled to any recovery and dismissed Fireman's Fund's petition in intervention. Fireman's Fund filed a motion for new trial, and the district court overruled the motion. Fireman's Fund appealed to this court.

This is an equity case, and we review it de novo on the record. We are called upon to decide, as between a trust deed beneficiary and its insurer, who has rights to certain insurance

proceeds.

At the outset, it is necessary to describe the nature of the insurance policy issued to the Pantanos by Fireman's Fund. We have long recognized that mortgagees have an insurable interest in the mortgaged property. See *Hanover Fire Ins. Co. v. Bohn*, 48 Neb. 743, 67 N.W. 774 (1896). In insuring, a mortgagee insures not the real estate, but his interest in or lien on the real estate. *Id.*; 3 George J. Couch et al., Cyclopedia of Insurance Law § 24:72 (rev. 2d ed. 1984). The mortgagee has an insurable interest only to the extent of the amount owing under the mortgage. *Wriedt v. Beckenhauer*, 183 Neb. 311, 159 N.W.2d 822 (1968). If the underlying debt is satisfied, then the mortgagee's insurable interest terminates. See, *id.*; 3 Couch et al., *supra*. For purposes of insurable interest, a trust deed beneficiary is the functional equivalent of a mortgagee.

The parties' first dispute is whether Maryland Plaza's underlying debt was satisfied when the trial court found that no deficiency judgment action would lie. Nebraska's deficiency judgment statute, contained in the Nebraska Trust Deeds Act, limits the amount which a court can award as a deficiency judgment:

> The court shall not render judgment for more than the amount by which the amount of the indebtedness with interest and the costs and expenses of sale, including trustee's fees, exceeds the fair market value of the property or interest therein sold as of the date of the sale, and in no event shall the amount of said judgment, exclusive of interest from the date of sale, exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured thereby, including said costs and expenses of sale.

§ 76-1013. The district court properly found that because the fair market value of the property was at least equal to the indebtedness at the time of the public sale, no deficiency judgment action would lie against Maryland Plaza.

The district court also found that Maryland Plaza's underlying obligation had not been satisfied. In so doing, the district court relied on *Sumner v. Enercon Development Company*, 307 Or. 579, 771 P.2d 619 (1989). In *Sumner*,

Oregon's anti-deficiency-judgment statute wholly precluded deficiency judgment actions by foreclosing purchase money mortgagees against mortgagors. Unable to recover against the mortgagor, the mortgagee in *Sumner* sought a deficiency judgment against the guarantor. The Supreme Court of Oregon held that the anti-deficiency-judgment statute limited "the trial court's authority to enter a deficiency judgment" but had "no effect on the existence of the underlying debt." *Id*. at 582, 771 P.2d at 620. Accord *Consolidated Capital Income v. Khaloghli*, 183 Cal. App. 3d 107, 227 Cal. Rptr. 879 (1986) (although anti-deficiency-judgment statute precludes mortgagee from recovering against principal debtor, mortgagee may recover deficiency from guarantor).

The Pantanos argue that the Oregon anti-deficiency-judgment statute is analogous to § 76-1013 and that the district court properly relied on *Sumner*. We disagree.

Under § 76-1013, a court may allow a deficiency judgment in certain circumstances. We interpret § 76-1013 to require the following calculations: The court must first determine the fair market value of the property. The court must next compare the fair market value of the property to the sale price to determine which is the greater amount. Finally, the court must subtract this greater amount from the total indebtedness to arrive at the amount of the deficiency. The amount of the deficiency represents the amount still due and owing to the creditor. Accordingly, a finding of "no deficiency" is tantamount to a finding that nothing is due and owing to the creditor because either the value of the property or the proceeds of the sale were sufficient to satisfy the debt.

Section 76-1013 contrasts starkly with the Oregon statute at issue in *Sumner*. While § 76-1013 allows a cause of action for a deficiency judgment and places some limits on the amount of recovery, the Oregon statute wholly denies a cause of action for a deficiency judgment. Moreover, the Oregon statute requires no comparison of debt, fair market value, and sale price. The Oregon statute never asks the question which lies at the heart of § 76-1013: Did the creditor get its due? We thus find the reasoning of *Sumner* inapplicable to the present case.

The Nebraska Trust Deeds Act was enacted in 1965. The act

authorizes the use of trust deeds to secure the performance of obligations. *Blair Co. v. American Savings Co.*, 184 Neb. 557, 169 N.W.2d 292 (1969). The act provides that a trust deed may confer a power of sale on a trustee. *Id.*; § 76-1005. The act provides for the possibility of a deficiency judgment following a trustee's sale. § 76-1013. The amount of the deficiency judgment is limited; a creditor can recover only the difference between the total indebtedness and the greater of the sale price or the fair market value. *Id.*

In the world of deficiency judgments, this statute represents a departure from tradition. Traditionally, the amount of a deficiency judgment was the total indebtedness minus the price paid at public sale. 1 Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 8.3 (3d ed. 1993). This equation resulted in considerable benefit to the creditor. At sale, the creditor could radically underbid a valuable property, take title, and then sue the debtor for the deficiency. *Id.*

Legislatures responded to this problem in part by enacting statutes, like § 76-1013, which added the element of fair market value. See 1 Nelson & Whitman, *supra*. Under § 76-1013, for example, the amount of a deficiency judgment would be the total indebtedness minus the greater of (1) the sale price or (2) the fair market value of the property. A creditor gains no advantage by underbidding a property because, if he does, the deficiency will still be calculated on the basis of the fair market value. In essence, the creditor must apply the value of the property toward the indebtedness. See, *OMP v. Security Pacific Business Finance, Inc.*, 716 F. Supp. 251 (N.D. Miss. 1989); *Lake Hillsdale Estates, Inc. v. Galloway*, 473 So. 2d 461 (Miss. 1985); *Investments v. Housing, Inc.*, 292 N.C. 93, 232 S.E.2d 667 (1977). Thus, the debtor gets credit for the value of the property. *Guardian Depositors Corp. v. Powers*, 296 Mich. 553, 296 N.W. 675 (1941); *Carrols Equities Corp. v. Della Jacova*, 126 N.H. 116, 489 A.2d 116 (1985).

Crediting the value of the property against the debt is especially appropriate when the mortgagee or trust deed beneficiary purchases the property. See *Hellman v. Capurro*, 92 Nev. 314, 549 P.2d 750 (1976). In *Hellman*, the trust deed beneficiaries purchased the trust property. The trust property

was valued at $117,600, the debt was approximately $65,400, and the sale price was $20,000. Applying a statute substantially similar to § 76-1013, the Supreme Court of Nevada found that the debt had been satisfied:

> Finding that no action for a deficiency judgment will lie for the reason that the deed of trust beneficiary purchased the property and obtained value in excess of the indebtedness is equivalent to finding that the trustor's debt has been extinguished. [Citations omitted.] A mortgagee or a beneficiary to a deed of trust is entitled to only one satisfaction of his debt. [Citations omitted.] . . . It cannot in fairness be asserted that the [trustor's] obligation to the [beneficiary] remains unsatisfied . . . .

92 Nev. at 316, 549 P.2d at 751. *Hellman* thus stands for the proposition that when a trust deed beneficiary purchases trust property that has a fair market value greater than the amount of the debt, the underlying obligation is satisfied.

We find the reasoning of *Hellman* persuasive. Accordingly, we hold that when, under § 76-1013, a trial court finds no deficiency, the underlying obligation is satisfied.

In the present case, Fireman's Fund and the Pantanos stipulated that the fair market value of the property at least equaled the total indebtedness secured by the property. Because of that stipulation, the trial court correctly found that neither Fireman's Fund nor the Pantanos were entitled to a deficiency judgment. As a result, we find that Maryland Plaza's debt owed to the Pantanos has been satisfied.

Because the debt owed to the Pantanos has been satisfied, the Pantanos' insurable interest has terminated. See 3 George J. Couch et al., Cyclopedia of Insurance Law § 24:72 (rev. 2d ed. 1984). If the Pantanos' insurable interest has terminated, then it would seem that the Pantanos are not entitled to any share of the insurance proceeds. The Pantanos contend, however, that Fireman's Fund cannot recover the proceeds because Fireman's Fund is limited to exercising its subrogation rights against the trustor. Fireman's Fund responds that because the debt has been satisfied, the Pantanos have not suffered a security loss and must return the proceeds.

The parties' second dispute, therefore, is whether Fireman's

Fund has a cause of action against the Pantanos. Both parties rely heavily on our decision in *Wriedt v. Beckenhauer*, 183 Neb. 311, 159 N.W.2d 822 (1968).

In *Wriedt*, three men, Day, Mohr, and Beckenhauer, owned a tract of land. The three men purchased fire insurance to cover improvements to the property. After purchasing the insurance, the three men sold the property to Wriedt. Wriedt executed and delivered a mortgage back to Beckenhauer. A fire occurred, partially damaging a house on the property. The three men filed a proof of loss and received insurance proceeds. Wriedt brought an action against the three men to recover these proceeds, and the insurance company intervened.

In reviewing the case, we first determined the insurable interests of each of the parties. We found that Day and Mohr, having conveyed their entire interest in the property, had no insurable interest and were not entitled to any share of the proceeds. We also found that although Wriedt had an insurable interest, his interest was not protected by the policy, and thus Wriedt was not entitled to any share of the proceeds. We then found that Beckenhauer did have an insurable interest, but only to the extent of the amount owing under the mortgage.

In *Wriedt*, as in the present case, the two parties with any claim to the insurance proceeds were the mortgagee and the insurance company. In discussing the relative rights of the mortgagee and the insurance company in *Wriedt*, we stated:

> In the event of a loss by fire of the insured property, or a part thereof, the mortgagee is entitled to be compensated by his insurance, but if the mortgage indebtedness is subsequently paid in full, he has not sustained a security loss and insurer is entitled to recover the insurance paid. "If the mortgagee, or one in like position, is the party insured and the policy is written so as to cover his interest only, insurer, on payment to the mortgagee, becomes subrogated pro tanto to the rights of the mortgagee against the mortgagor, even though the policy contains no subrogation clause purporting to give such right to insurer . . . ."

*Id.* at 315, 159 N.W.2d at 825.

*Wriedt* stands for two distinct principles relating to policies

insuring the interest of mortgagees " 'or one in like position.' " First, on payment to the mortgagee, the insurer becomes subrogated to the rights of the mortgagee against the mortgagor. Second, when the mortgagee does not suffer a security loss, the insurer is entitled to recover the insurance proceeds paid to the mortgagee. These two propositions stand independently. That is, an insurer can recover the paid proceeds, but need not do so through a subrogation action. It remains to apply these two principles to the present case.

The subrogation principle is easily applied and is not disputed. Because Fireman's Fund paid the face value of the policy to the Pantanos, Fireman's Fund possessed a subrogation right against the trustor, Maryland Plaza. If the Pantanos had received a deficiency judgment against Maryland Plaza, then Fireman's Fund would have had a subrogation right to a pro tanto share of the judgment, subject only to the Pantanos' right to fully recover their investment. See *id*. However, the Pantanos did not receive a deficiency judgment, and therefore Fireman's Fund was unable to exercise any right of subrogation.

The recovery principle is the focus of the parties' dispute. As we have just stated, if a deficiency judgment had been entered and Maryland Plaza had paid the Pantanos in full, then Fireman's Fund would have been entitled to a share of that payment. Instead of finding a deficiency and ordering payment, the district court found that no deficiency was warranted because the fair market value of the property at least equaled the outstanding indebtedness. Previously in this opinion, we held that this was tantamount to finding that Maryland Plaza had paid the Pantanos in full. Fireman's Fund is entitled to a share of this "payment" just as it would have been entitled to a share of a cash payment. The rights of the insurer do not decrease simply because its insured, a trust deed beneficiary, is paid in equity rather than in cash.

We therefore hold that if a court finds no deficiency because the fair market value of the property is greater than or equal to the total indebtedness, and if the property is insured by a policy insuring the trust deed beneficiary's interest only, then the insurance company is entitled to recover proceeds paid out to

the beneficiary.

The outstanding indebtedness due the Pantanos should have been deemed paid in full by virtue of the trial court's finding of no deficiency. Because the Pantanos received the face value of the policy, which insured only the Pantanos' interest in the trust properties, Fireman's Fund is entitled to recover the proceeds paid to the Pantanos. Fireman's Fund may also be entitled to an award of prejudgment interest, but we are unable, on this record, to determine whether Fireman's Fund has met the procedural prerequisites to such an award. See Neb. Rev. Stat. § 45-103.02 (Reissue 1988). This matter can be examined on remand.

We reverse the decision of the district court and remand the cause with directions to enter judgment for Fireman's Fund against the Pantanos in the amount of $155,000.

REVERSED AND REMANDED WITH DIRECTIONS.