Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/15/2026 08:12 AM CDT

American Exchange Bank, appellee, v.
Luke G. Topp and Ria N. Topp, appellants.

___ N.W.3d ___

Filed May 15, 2026.    No. S-25-290.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

2. **____: ____.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

3. **Judgments: Statutes: Appeal and Error.** When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.

4. **Contracts: Appeal and Error.** The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below.

5. **Contracts: Public Policy.** The determination of whether a contract violates public policy presents a question of law.

6. **Trusts: Deeds: Security Interests.** Neb. Rev. Stat. § 76-1013 (Reissue 2018) plainly applies to "obligations for which the trust deed was given as security."

7. **Trusts: Deeds: Public Policy.** Allowing a beneficiary to proceed with a trustee sale and simultaneously avoid the limitations of the antideficiency statute, Neb. Rev. Stat. § 76-1013 (Reissue 2018), is a violation of public policy.

8. **Trusts: Deeds: Security Interests: Waiver.** A waiver of the limitation on deficiency judgments in Neb. Rev. Stat. § 76-1013 (Reissue 2018)

is unenforceable when a trust deed is given to secure an obligation, the power of sale is exercised, and a deficiency judgment is sought.

9. **Valuation: Evidence.** Some relationship exists between appraised and actual value such that the appraised value can properly be said to constitute relevant evidence of at least the minimum value of the land.

10. **Circumstantial Evidence: Proof.** Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact. A fact finder may draw reasonable inferences from the facts and circumstances proved.

11. **Evidence.** Where there is a conflict in the evidence or where different minds may reasonably draw different conclusions or inferences from the adduced evidence, the matter at issue must be submitted to a fact finder.

Appeal from the District Court for Johnson County: Ricky A. Schreiner, Judge. Reversed and remanded for further proceedings.

Sarah E. Cavanagh and Justin D. Eichmann, of Houghton Bradford Whitted, P.C., L.L.O., for appellants.

Trev E. Peterson and Robert J. Drust III, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Bergevin, J.

## INTRODUCTION

Luke G. Topp and Ria N. Topp appeal from a summary judgment granted by the district court. The court found that there was no issue of material fact and that the Topps were indebted to American Exchange Bank (AEB) under guaranties they executed to secure loans to their business, Topp's Mechanical, Inc. (TMI).

On appeal, the Topps argue that they should have received credit for the fair market value of their real property sold in trustee sales prior to the instant action and assert that a genuine

issue of material fact remains as to the properties' fair market values at the time of the sales. They rely on Nebraska's anti-deficiency statute, Neb. Rev. Stat. § 76-1013 (Reissue 2018), governing trustee sales, to contend that a waiver provision in the guaranties is unenforceable, as a violation of public policy, and to assert that assessed values and prior appraisals were sufficient to show a genuine issue of material fact. We reverse, and remand for further proceedings.

## BACKGROUND

In 2015 and 2017, TMI executed four promissory notes with AEB, two of which were U.S. Small Business Administration loans, for a total principal balance of $4,715,150. The parties agree that the notes were secured by four unconditional guaranties—two by each of the Topps—and two deeds of trust made by the Topps, therein "'Borrowers.'" Each of the trust deeds conveyed three real properties owned by the Topps to a trustee[1] and named AEB as beneficiary.[2] The trust deeds provided, in relevant part:

> This Deed of Trust shall secure (a) the payment of the principal sum and interest evidenced by [TMI's] note . . . and any and all modifications, extensions and renewals thereof or thereto and any and all future advances and readvances hereunder pursuant to one or more promissory notes or credit agreements (herein called "Note"); . . . and (d) *all* indebtedness and *obligations of Borrower to Lender whether direct, indirect, absolute or contingent and whether arising by* note, *guaranty,* overdraft *or otherwise*.

(Emphasis supplied.)

TMI defaulted on the loans and filed for chapter 11 bankruptcy in 2021. AEB claimed that TMI was indebted to it for

---

[1] See Neb. Rev. Stat. § 76-1001(4) (Reissue 2018) ("person to whom title to real property is conveyed by trust deed").

[2] § 76-1001(1) ("the person for whose benefit a trust deed is given").

$3,757,067.76 as of January 15, 2021. As part of the liquidation plan, AEB received $866,348.18 from the sale of TMI's personal property. Subsequently, the Topps filed for chapter 12 bankruptcy in 2022. AEB claimed that the Topps were indebted to it for $3,313,835.38 as of September 6, 2022.

In October 2022 and February 2023, through judicial foreclosure proceedings, AEB sold three parcels of real estate owned by TMI. AEB purchased all three parcels for a total of $162,600. In April 2024, AEB resold all three parcels for a total of $945,000. In November 2023, AEB conducted trustee sales of the Topps' three properties. AEB purchased the properties for $310,000. Between the foreclosures and trustee sales, in the respective views of the parties, AEB received approximately $450,000 in proceeds, and the Topps lost at least $3 million in properties.

In November 2023, after the trustee sales, AEB brought the instant action against the Topps for a deficiency judgment under the four guaranties. AEB sought a total of $3,051,200.27 as of November 14, 2023, plus daily interest. The Topps raised a number of affirmative defenses, including that AEB failed to mitigate its claimed damages, accord and satisfaction, and estoppel.

AEB moved for summary judgment. It asserted that there was no genuine issue of material fact because the Topps admitted to the amounts owed on the notes and that all four notes were secured by the four guaranties. In defense, the Topps sought credit for the fair market value of their properties sold under the trust deeds against the amounts owed. The Topps also maintained that a genuine issue of material fact existed as to the fair market value of the properties at the time of the trustee sales. The evidence presented at the motion for summary judgment hearing included March 2021 appraisals by AEB showing a total appraised value of $1,278,000, proof of the 2023 assessed values showing a total assessed value of $1,253,071, and an averment by AEB's vice president that the

fair market values at the time of the trustee sales were a total of $1,113,000.

The district court determined that under a provision of the guaranties, the Topps waived any defense "based upon any claim that . . . Lender did not obtain the fair market value of the Collateral." The guaranty defined "'Collateral'" as "any property taken as security for payment of the Note[s] or any guarant[y] of the Note[s]." The court granted AEB's summary judgment motion. The Topps moved for reconsideration or a new trial. The court denied their motion.

The Topps filed a timely appeal. We moved this appeal to our docket on our own motion.[3]

## ASSIGNMENTS OF ERROR

The Topps assign, summarized and restated, that the district court erred in (1) concluding that they were not entitled to credit for the fair market values of the trust deed properties under § 76-1013, (2) not determining that the waiver provision in the guaranties was unenforceable as a violation of public policy, and (3) failing to find a genuine issue of material fact existed as to the fair market values of their three properties.

## STANDARD OF REVIEW

[1,2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[4] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences

---

[3] See, Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024); Neb. Ct. R. App. P. § 2-102(C) (rev. 2022).

[4] *U.S. Specialty Ins. Co. v. D S Avionics*, 320 Neb. 287, 26 N.W.3d 761 (2025).

that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[5]

[3-5] When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.[6] The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below.[7] The determination of whether a contract violates public policy presents a question of law.[8]

## ANALYSIS

There are three primary issues presented by the Topps' appeal. The first is whether the trust properties were subject to § 76-1013, such that the Topps should receive credit on their obligation for the fair market value of the properties. If so, the second issue is whether the waivers in the Topps' guaranties are unenforceable. If so, the final issue is whether a genuine issue remains concerning the fair market values of the properties at the time of the trustee sales. We resolve each issue in the affirmative.

## § 76-1013 Is Implicated

We have previously recognized:

> The Nebraska Trust Deeds Act was enacted by the 1965 Legislature. Laws 1965, c. 451, p. 1423. It authorizes the use of trust deeds to secure the performance of obligations and prescribes, generally, the procedures for

---

[5] *Id.*

[6] *Boone River, LLC v. Miles*, 318 Neb. 760, 18 N.W.3d 802 (2025).

[7] *State ex rel. Douglas Cty. Sch. Dist. No. 66 v. Ewing*, 319 Neb. 663, 24 N.W.3d 861 (2025).

[8] *Bruce Lavalleur, P.C. v. Guarantee Group*, 314 Neb. 698, 992 N.W.2d 736 (2023).

their execution and enforcement. The act provides that a
trust deed may confer a power of sale upon the trustee.
In the event of a default, the trust property may be
sold by the trustee to satisfy the obligation secured.
The act also provides for the substitution of trustees,
reinstatement after default, and the procedure for the sale
and conveyance of the trust property by the trustee.[9]

The Nebraska Trust Deeds Act (the Act) authorizes the use of a
security device not available prior to its enactment and permits
a method of financing not formerly available, since trust deeds
were considered subject to the same rules and restrictions
as mortgages.[10]

A trust deed is a deed executed in conformity with the Act
that conveys real property to a trustee "to secure the per-
formance of an obligation of the grantor or other person
named in the deed."[11] The Act includes detailed procedures
that, in the event of a breach of the underlying obligation,
permit the trust property to be sold without the involvement
of any court.[12] Specifically, the Act allows a trust deed to
expressly confer upon a trustee the power of sale.[13] Pursuant
to this power of sale, a trustee can sell the property conveyed
by a trust deed without any court's authorization or direction,
though the trustee must comply with procedural requirements
contained in the Act.[14]

---

[9] *Blair Co. v. American Savings Co.*, 184 Neb. 557, 558, 169 N.W.2d 292, 293 (1969).

[10] See *Blair Co. v. American Savings Co., supra* note 9.

[11] § 76-1001(3).

[12] *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013). See Neb. Rev. Stat. §§ 76-1006 to 76-1011 (Reissue 2018 & Cum. Supp. 2024).

[13] *First Nat. Bank of Omaha v. Davey, supra* note 12. See Neb. Rev. Stat. § 76-1005 (Reissue 2018).

[14] *First Nat. Bank of Omaha v. Davey, supra* note 12. See §§ 76-1006 to 76-1011.

After the sale of trust property, an "action . . . to recover the balance due upon the obligation for which the trust deed was given as security" may be brought to recover any deficiency.[15] The Act also contains an antideficiency provision within § 76-1013, which limits the amount that a court can award as a deficiency judgment after "any sale of property under a trust deed."

> Before rendering judgment, the court shall find the fair market value at the date of sale of the property sold. The court shall not render judgment for more than the amount by which the amount of the indebtedness with interest and the costs and expenses of sale, including trustee's fees, exceeds the fair market value of the property or interest therein sold as of the date of the sale, and in no event shall the amount of said judgment, exclusive of interest from the date of sale, exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured thereby, including said costs and expenses of sale.[16]

Under § 76-1013, when a trial court finds no deficiency, the underlying obligation is satisfied.[17]

The first issue in this case is whether the Topps are entitled to credit for the fair market values of their properties sold under the trust deeds. While the Topps maintain that they are, AEB argues that § 76-1013 is inapplicable to the Topps' obligation because they are guarantors of TMI's underlying obligation.

AEB contends that under our holding in *Mutual of Omaha Bank v. Murante*,[18] § 76-1013 does not apply to guarantors, only the underlying borrowers. In reaching the resolution of

[15] § 76-1013.

[16] § 76-1013.

[17] *Pantano v. Maryland Plaza Partnership*, 244 Neb. 499, 507 N.W.2d 484 (1993).

[18] *Mutual of Omaha Bank v. Murante*, 285 Neb. 747, 829 N.W.2d 676 (2013).

that case, this court broadly stated that "[t]he plain language of the Act limits the borrower's liability when the property secured by a deed of trust has been sold at a trustee's sale, but imposes no limitations on a guarantor's liability."[19] AEB relies on this principle for its contention that § 76-1013 does not apply to claims against a guarantor of a debt secured by a trust deed—only that of a principal borrower. We disagree with AEB's reading of *Murante*.

In *Murante*, a guarantor sought credit on his obligation for the fair market value of the borrowers' real estate sold at a trustee's sale. Importantly, in that case, the guaranty was not secured by the deed of trust. This court concluded that because the guarantor in *Murante* did not give a deed of trust as security for his guaranty—his obligation—the rights under the guaranty were not subject to the provisions of the Act. Simply, the guarantor's obligation was not one "for which the trust deed was given as security."[20]

*Murante* rests on the principle that promissory notes and guaranties thereof are separate contracts that must be read and interpreted separately from one another. However, *Murante* does not stand for the principle that § 76-1013 cannot apply to the obligation of a guarantor.

[6] In the Topps' case, they executed a trust deed that provided, in relevant part, that it secured both "the payment of the principal sum and interest evidenced by [TMI's] note" and "all indebtedness and obligations of Borrower to Lender." Under the trust deed, the "Borrower" was the Topps. Accordingly, unlike the situation in *Murante*, the Topps' obligation as guarantors was secured by the trust deeds. Section 76-1013 plainly applies to "obligations for which the trust deed was given as security." Thus, § 76-1013 applies to the guaranties executed by the Topps for which AEB seeks a deficiency judgment.

---

[19] *Id*. at 755, 829 N.W.2d at 683.

[20] § 76-1013.

That conclusion brings us to the second issue on appeal, whether the guaranties' waiver provision is enforceable such that the Topps are precluded from the antideficiency benefits of § 76-1013.

### Unenforceable Waiver

The guaranties in this case provide that the "Guarantor waives defenses based upon any claim that [the] Lender did not obtain the fair market value of the Collateral." In this case, the trust properties were the "Collateral" and AEB concedes that they were not sold at fair market value. While the Topps contend that this waiver is ineffective as a matter of public policy, AEB argues that the Act does not contain any restrictions on the parties' rights to waive defenses provided by the Act. We disagree with AEB.

Public policy is the principle of the law that holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good.[21] It is the principles under which the freedom of contract or private dealings is restricted by law for the good of the community.[22] We have consistently recognized that under our system of separated powers, it is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of the state.[23]

The Act recognizes the existence of two different methods of foreclosing a trust deed: (1) by the exercise of the trustee's power of sale pursuant to the Act, or (2) by judicial foreclosure in the manner of mortgages, which does not depend upon or use the trustee's power of sale, but, rather, results in a

---

[21] See *New Light Co. v. Wells Fargo Alarm Servs.*, 247 Neb. 57, 525 N.W.2d 25 (1994).

[22] *Id*.

[23] See, e.g., *Green Plains Trade Group v. Archer Daniels Midland Co.*, 320 Neb. 882, 31 N.W.3d 577 (2026); *Wilke v. Woodhouse Ford*, 278 Neb. 800, 774 N.W.2d 370 (2009).

sheriff's sale by decree of the district court.[24] Section 76-1013 is inapplicable to judicial foreclosure.[25] Had AEB desired to circumvent § 76-1013, it could have done so by electing to proceed via judicial foreclosure. However, by choosing to proceed via trustee sale, it was required to follow the prescribed procedures for their execution and enforcement.[26]

Moreover, § 76-1013 does not provide a personal right to the trustor—the person conveying real property by a trust deed.[27] It does not entitle the trustor to a judgment that does not "exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured thereby."[28] Instead, "in no event shall the amount of [the] *judgment*" exceed such difference, and "[t]he court *shall* not render judgment for more than the amount by which the amount of the indebtedness . . . exceeds the fair market value of the property of interest therein sold as of the date of the sale."[29] The general rule is that in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion.[30] The parties cannot waive this legislative mandate limiting a court's judgment.

[7] In its enactment, the Legislature determined that a trustee may exercise the power of sale "under which the trust property may be sold *in the manner provided in the* [*Act*] after a breach of an obligation for which the trust property is conveyed as security."[31] The Act plainly limits the judgment

---

[24] See *First Nat. Bank of Omaha v. Davey, supra* note 12. See, also, § 76-1005.

[25] See *First Nat. Bank of Omaha v. Davey, supra* note 12.

[26] See § 76-1005.

[27] See § 76-1001(2).

[28] § 76-1013.

[29] *Id.* (emphases supplied).

[30] *Lincoln Cty. Bd. of Equal. v. Western Tabor Ranch Apts.*, 314 Neb. 582, 991 N.W.2d 889 (2023).

[31] § 76-1005 (emphasis supplied).

a court may render "after any sale of property under a trust deed."[32] Section 76-1013 is the Legislature's clear expression of the public policy of this state.[33] Allowing a beneficiary to proceed with a trustee sale and simultaneously avoid the limitations of the antideficiency statute is a violation of the Legislature's public policy.

[8] We hold that a waiver of the limitation on deficiency judgments in § 76-1013 is unenforceable when a trust deed is given to secure an obligation, the power of sale is exercised, and a deficiency judgment is sought. We note that we are not alone in reaching this conclusion.[34]

Accordingly, in this case, the parties' contractual waiver of the benefits of § 76-1013 is ineffective.

## Genuine Issue as to Fair Market Value

The final issue before us is the Topps' contention that a genuine issue of material fact remains as to the trust properties' fair market value at the time of the trustee sales. At the summary judgment hearing, AEB argued that the use of the

---

[32] § 76-1013.

[33] See *Wilke v. Woodhouse Ford, supra* note 23.

[34] *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 236 Ariz. 410, 415, 341 P.3d 452, 457 (2014) ("identifiable public policy served by [antideficiency statute] clearly outweighs the interest in enforcing prospective waiver terms, [thus] such terms are unenforceable"); *Founders Bank and Trust Co. v. Upsher*, 830 P.2d 1355 (Okla. 1992) (principal debtor may not waive the protection of the antideficiency statute); *Brunsoman v. Scarlett*, 465 N.W.2d 162 (N.D. 1991) (rights and defenses granted debtors largely illusory if prospective creditor could compel waiver thereof); *Barnaby v. Boardman*, 313 N.C. 565, 568, 330 S.E.2d 600, 602 (1985) (buyer not allowed to deny antideficiency protection as this "'would be to allow by indirection that which was directly forbidden'"); *Freedland v. Greco*, 45 Cal. 2d 462, 289 P.2d 463 (1955) (antideficiency provisions may not be waived by debtor); *Stretch v. Murphy*, 166 Or. 439, 112 P.2d 1018 (1941) (antideficiency statute does not create mere personal privilege which may be waived, but inhibits court's rendering of judgment—its effect is to deprive the court of power).

properties' assessed values was not relevant to the question of the trust properties' fair market value. In support, AEB relied on the proposition of law that "the assessed value of property for tax purposes, in and of itself, is generally not admissible as direct evidence of value for purposes other than taxation."[35] AEB's reliance is misplaced.

[9] In *First Nat. Bank of York v. Critel*,[36] the Nebraska Court of Appeals held that the assessed value of land for tax purposes was not relevant to show the inadequacy of a judicial sale. We reversed.[37] In doing so, we recognized that differing factors may cause the appraised value of property to be less than the property's actual value. Nonetheless, "some relationship exists between appraised and actual value such that the appraised value can properly be said to constitute relevant evidence of at least the minimum value of the land."[38]

The factual scenario in *Critel* differs from the preceding cases wherein the proposition was initially set forth[39] and later invoked.[40] Both of those prior cases were condemnation actions in which the condemner sought to introduce evidence of the assessed value of the condemned land to establish fair market value. The basis of the proposition's use in both of those cases was that the appraised value of real property is "ordinarily

---

[35] *Lienemann v. City of Omaha*, 191 Neb. 442, 444, 215 N.W.2d 893, 894 (1974). See, *Holman v. Papio-Missouri River Nat. Resources Dist.*, 246 Neb. 787, 523 N.W.2d 510 (1994); *First Nat. Bank of York v. Critel*, No. A-94-698, 1995 WL 762935 (Neb. App. Dec. 26, 1995) (not designated for permanent publication), *affirmed in part and in part reversed* 251 Neb. 128, 555 N.W.2d 773 (1996).

[36] *First Nat. Bank of York v. Critel, supra* note 35.

[37] See *First Nat. Bank of York v. Critel*, 251 Neb. 128, 555 N.W.2d 773 (1996).

[38] *Id*. at 133, 555 N.W.2d at 777.

[39] See *Lienemann v. City of Omaha, supra* note 35.

[40] See *Holman v. Papio-Missouri River Nat. Resources Dist., supra* note 35.

much less than [the property's] actual value."[41] Thus, in those cases, the condemners could not rely on the properties' assessed values as direct evidence of fair market value.

However, in *Critel*, the sale prices of the foreclosed properties were less than their assessed values, and the debtors sought to introduce evidence of the properties' assessed values as circumstantial evidence that the judicial sale price was inadequate. We held that the evidence of assessed value was properly received because assessed values are relevant to establishing a minimum fair market value.[42]

[10] There are two kinds of evidence, direct and circumstantial.[43] Direct evidence directly proves the fact in dispute without inference or presumption.[44] Circumstantial evidence is evidence of one or more facts from which the existence of the fact in dispute may logically be inferred.[45] The law makes no distinction between these two kinds of evidence.[46] A fact may be proved by direct evidence alone, circumstantial evidence alone, or a combination of the two.[47] Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact.[48] A fact finder may draw reasonable inferences from the facts and circumstances proved.[49]

---

[41] *Lienemann v. City of Omaha, supra* note 35, 191 Neb. at 443, 215 N.W.2d at 894. See *Holman v. Papio-Missouri River Nat. Resources Dist., supra* note 35, 246 Neb. at 795, 523 N.W.2d at 517 ("other factors, such as matters of uniformity and proportionality . . . come into play [and consequentially,] in any given case the tax value may be less than the market value").

[42] See *First Nat. Bank of York v. Critel, supra* note 37.

[43] *Estate of Block v. Estate of Becker*, 313 Neb. 818, 986 N.W.2d 726 (2023).

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

The Topps introduced the assessed values to rebut AEB's asserted fair market values of the trust properties at the time of the trustee sales. The assessed values were also supported by AEB's own appraisals conducted 2 years prior, which reflected fair market values that exceeded the assessed values at the time of the trustee sales. Both the assessed values and the appraised values were circumstantial evidence that the fair market value of the trust properties was greater than AEB's asserted values.

[11] Where there is a conflict in the evidence or where different minds may reasonably draw different conclusions or inferences from the adduced evidence, the matter at issue must be submitted to a fact finder.[50] It is the role of the fact finder to judge the issues of fact in its own way, that is, by the ordinary, natural tests of common sense and reason.[51] Because a fact finder could reasonably infer that the fair market values of the properties at the time of the trustee sales were greater than AEB's asserted values, a factual issue remains, and summary judgment was improperly granted. Accordingly, we must reverse the district court's grant of summary judgment and remand the matter for further proceedings.

## CONCLUSION

The Topps' obligation under the guaranties for TMI's promissory notes was secured by the real properties conveyed in the trust deeds. Accordingly, Nebraska's antideficiency statute, § 76-1013, was implicated. Further, a waiver of the limitation on deficiency judgments in § 76-1013 is unenforceable when a trust deed is given to secure an obligation, the power of sale is exercised, and a deficiency judgment is sought. Thus, § 76-1013 was applicable to the instant deficiency action, and the Topps are entitled to credit for the fair market values of the trust properties at the time of the trustee

---

[50] *Id*.

[51] See *id*.

sales. Finally, the Topps adduced evidence that showed a genuine issue of material fact remained as to those values. Hence, the district court erred in granting summary judgment in AEB's favor.

Reversed and remanded for<br>further proceedings.

Papik, J., dissenting.

The Topps signed guaranties in which they agreed to waive any defense "based upon any claim that [AEB] did not obtain the fair market value of the Collateral." Because this language covers the Topps' claim that they should receive credit for the fair market value of properties sold under the trust deeds, and I do not see a basis to hold the waiver unenforceable, I would affirm the district court's entry of summary judgment in favor of AEB.

I differ with the majority in its conclusion that the Topps' waivers are unenforceable on public policy grounds. We are usually "disinclined to find a contractual agreement void as against public policy." *Sinu v. Concordia University*, 313 Neb. 218, 229, 983 N.W.2d 511, 522 (2023). We have emphasized that courts should be cautious in holding contracts void on the ground that the contract is contrary to public policy, stating that to be void as against public policy, the contract should be "quite clearly repugnant to the public conscience." *Id.* We have also said that the power of courts to invalidate contracts for being in contravention of public policy is a very delicate and undefined power which should be exercised only in cases free from doubt. *Sinu v. Concordia University, supra.*

As I understand the foregoing authority, a court needs to be very confident that enforcement of a contract will violate public policy to hold it unenforceable. And, as the majority observes, it is not courts that determine public policy, but the Legislature. See, e.g., *Green Plains Trade Group v. Archer Daniels Midland Co.*, 320 Neb. 882, 900, 31 N.W.3d 577, 588 (2026) ("it is the function of the Legislature, through the

enactment of statutes, to declare what is the law and public policy of the state").

Applying this standard, I am not all that sure that it would violate a public policy declared by the Legislature to allow guarantors like the Topps to waive the antideficiency protections of Neb. Rev. Stat. § 76-1013 (Reissue 2018). To be sure, § 76-1013 articulates a public policy that those that incur obligations secured by trust deeds should receive credit for the full market value of their property sold after a sale by the trustee. But the relevant question in my view is not whether there is a public policy in favor of giving credit for the full market value of property sold at a trustee's sale, it is whether there is a public policy *prohibiting a party from waiving that protection*. I do not understand the Legislature to have spoken to that question, much less with the clarity we usually demand to hold a contractual provision unenforceable on public policy grounds.

The Legislature knows how to make clear that a party cannot waive statutory protections. See, e.g., Neb. U.C.C. § 9-602 (Reissue 2020) ("to the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor *may not waive or vary* the rules stated in the following listed sections") (emphasis supplied); Neb. U.C.C. § 12-106(g) (Cum. Supp. 2024) ("an account debtor *may not waive or vary* its rights under subsections (d)(1) and (e) or its option under subsection (d)(3)") (emphasis supplied); Neb. Rev. Stat. § 53-221 (Reissue 2021) ("[a] wholesaler *may not waive any of the rights* granted in sections 53-201 to 53-223, and the provisions of any agreement which would have such an effect shall be null and void") (emphasis supplied).

Similar language does not appear in § 76-1013. And while the majority correctly observes that several courts have concluded that waivers of deficiency judgment protections should be unenforceable on public policy grounds, other courts have concluded that where, as here, such protections are not accompanied by express antiwaiver language, freedom of contract

should prevail. See, e.g., *LaSalle Bank Nat. Ass'n v. Sleutel*, 289 F.3d 837 (5th Cir. 2002); *Moayedi v. Interstate 35/Chisam Road, L.P.*, 438 S.W.3d 1 (Tex. 2014). Because I understand that approach to be consistent with the standards we regularly apply to determine whether a contract is unenforceable on public policy grounds, I would find the waivers in this case are enforceable. Because the majority concludes otherwise, I respectfully dissent.